ENTERPRISE SOAP WORKS, Respondent, v. HENRY SAYERS *et al*, Appellants.

St. Louis Court of Appeals, November 7, 1893.

1. **Law and Fact:** INTERPRETATION OF WRITINGS: RESCISSION OF CONTRACT OF SALE. The interpretation of writings is always for the court, except when they are ambiguous and the ambiguity must be solved by extrinsic unconceded facts, or when they are adduced merely as containing evidence of facts from which different inferences can be drawn, and when it is for the jury and not for the court to

draw these inferences. And held that correspondence in evidence in this cause, which was offered to establish the rescission of a contract of sale, did not fall within either of these exceptions.

2. Rescission of Sale: TENDER, WHEN UNNECESSARY. A tender need not be shown, when it conclusively appears that it would have been fruitless, if made.

3. ————: RECOVERY OF PURCHASE MONEY: MEASURE OF RECOVERY. A vendee of merchandise, after payment of the purchase money, duly rescinded the sale. Subsequently he caused this merchandise to be attached in a suit against the vendor in a foreign jurisdiction for the recovery of this purchase money, and to be sold under a judgment *in rem* recovered by him therein. Later still he sued the vendor *in personam* for the purchase money. *Held*, in the latter suit, that the vendor was entitled to credit only for the net proceeds of the sale under the judgment *in rem*, and not for the reasonable value of the merchandise sold.

*Appeal from the St. Louis City Circuit Court,* Hon. Daniel D. Fisher, Judge.

Affirmed.

*R. M. Nichols,* for appellants.

(1) The fact that respondent, having discovered the tallow was not up to sample on November 17, 1889, continued for two months, without rescinding the contract, to negotiate for the tallow, under the contract, but at a rate below the contract price, is, together with a delay in rescinding the contract for a period of two months, such an exercise of dominion over the tallow as would amount to an acceptance and a waiver of its right to object on account of quality. Tiedeman on Sales, sec. 114; Benjamin on Sales [4 Am. Ed.], sec. 703; *Genethal v. Schnider,* 52 How. Prac. 134; *Lawrence, v. Dale,* 3 Johns. Ch. 30; *Stafford v. Pooler,* 6 Barb. 148; *Hallon v. Johnson,* 83 Pa. St. 222; *Hirshhorn v. Stewart,* 49 Iowa, 418; *The Dutchess Co. v. Harding,* 49 N. Y. 323. (2) To place the other party in *statu quo* by a return, or an offer to return, is an absolute

condition precedent to the exercise of the right of rescission. *Cahn v. Ried*, 18 Mo. App. 124; *Melton v. Smith*, 65 Mo. 324; *Tower v. Pauley*, 51 Mo. App. 75. (3) The first instruction was erroneous, in that it ignored the evidence as to the market value of the goods taken by respondent at Nashville, and told the jury to find a verdict for the difference between the amount paid as purchase money and the net proceeds realized from the sale of the goods under the attachment. If respondent had appropriated the goods without the judicial proceedings in Tennessee, in the present action it would be compelled to allow appellants their market value, as a credit, and how can the judgment, by which appellants are in no way bound, change that rule? *Spencer v. Vance*, 57 Mo. 427. (4) The instruction was further erroneous, in the fact that it substituted the price which the goods brought at a forced sale in the place of the market value of the goods, the evidence of a forced sale being no evidence of the market value, and inadmissible. *Lawrence v. City of Boston*, 119 Mass. 126; *Everett v. Railroad*, 59 Iowa, 445; *Railroad v. Daughty*, 22 N. J. L. 495.

*Geo. R. Lockwood*, for respondent.

(1) The refusal of respondent to accept the tallow, and its tender back of the tallow, through its letters, effected a rescission of the contract of purchase. Story on Sales [4 Ed.], secs. 417 and 418; *Grimoldy v. Wells*, 10 Com. Pl. (L. R.) 391; *Calhoun v. Paule*, 26 Mo. App. 274. (2) A tender back of the tallow was not necessary, as it was apparent that appellant would not accept and refund the purchase price. *Calhoun v. Paule*, 26 Mo. App. 274. (3) Whether respondent refused to accept the goods sent and tendered them back within a reasonable time was in this case a ques-

tion to be determined by the jury, and not the court. *Calhoun v. Paule*, 26 Mo. App. 274; *Gaus & Sons Mfg. Co. v. Mayer, etc., Mfg. Co.*, 42 Mo. App. 307; *Johnson v. Whitman, etc. Co.*, 20 Mo. App. 100; *Tower v. Pauly*, 51 Mo. App. 75; Tiedeman on Sales, sec. 115. This action was for the recovery of so much of the purchase price as had not been recovered by the attachment and sale of the goods shipped respondent, and not for damages for breach of warranty. *Johnson v. Whitman, etc. Co.*, 20 Mo. App. 100; *Calhoun v. Paule*, 26 Mo. App. 274; *Enterprise Soap Works v. Sayers*, 51 Mo. App. 310.

ROMBAUER, P. J.—This cause is here on its second appeal. On the former appeal (51 Mo. App. 310), we decided that two counts in a petition are inconsistent, where one seeks a recovery of damages for a breach of warranty in the sale of chattels, and the other a recovery on the ground that the sale had been rescinded by the plaintiff for cause. Our decision in short was to the effect that the affirmance of a sale in one count, and its denial in another, were inconsistent in point of fact, because the proof of one cause of action necessarily disproved the other. Both could not be true.

The case being remanded for new trial, the plaintiff elected to proceed as upon a rescission of the sale. The case was tried on that theory, and the plaintiff again recovered judgment. The defendant appeals, and assigns for error that there was no evidence that the defendant had rescinded the contract, and that the cause was submitted to the jury on erroneous instructions. These assignments we will proceed to consider in the order stated.

The entire evidence touching the contract and its rescission is in writing. ''The interpretation of writings

is always for the court except in two cases. *First*, where the writing is ambiguous and the ambiguity must be solved by extrinsic unconceded facts, and next where the writing is merely adduced as containing evidence of certain facts, from which different inferences may be drawn, and where it is for the jury and not the court to draw the inferences. *Mantz v. Maguire*, 52 Mo. App. 146. In the case at bar the court, upon the writings adduced, declared, as a matter of law, that the contract in question was rescinded by the plaintiff, but left it to the jury to find whether it was rescinded for good cause and within a reasonable time. Whether the court erred in so holding must be determined from such writings and extrinsic conceded facts.

The plaintiff resides in Nashville, Tennessee, and the defendants in St. Louis, Missouri. On October 25, 1889, the defendants wrote to plaintiff as follows: "We to-day mail you a sample of prime tallow, which passed through fire and is in consequence discolored by smoke; in every other respect is uninjured. We can sell you one hundred and fifty barrels of same (in syrup barrels) at four and one-eighth cents per pound, we paying freight to your city. Above, provided unsold when hearing from you. Please wire at our expense if you can use it. "

To this the plaintiff replied by wire October 28: "Will take tallow. Hold for instructions; if sold answer."

The defendants thereafter, having received instructions from the plaintiff as to the shipment of the tallow, shipped the same November 6, and on November 7, drew their bill of exchange, payable one day after sight, upon the plaintiff for $1,871.62, the contract price of the tallow, which the plaintiff accepted and paid prior to the receipt of the tallow. The tallow arrived in Nashville on November 16th, and was delivered to the

plaintiff shortly thereafter. The plaintiff thereupon wrote to the defendants under date of November 19th:

"We have gotten in the tallow, and regret that we have to make complaint of same. You spoke of having shipped it from some other point, and so we presume you have never examined it; for, if you had, we don't think you would have sent us such stock. It is not up to sample, and is very watery. As soon as the driver got the first load he came to the office and reported it full of water, before we examined it; he discovered it in rolling the barrels. When we examined it, we found he was correct. We send you a sample, that you may judge for yourself. If that is not satisfactory, we shall expect you to come, or send some one here to represent you, so that the matter can be adjusted in a satisfactory way, without any resort to law. If you cannot send or come, you can name any dealer here, and we will appoint one, these two to select the third man, and we will abide the decision of such a committee. We would much prefer that you come yourself. Please let us hear from you by return mail, and oblige."

To this the defendants replied under date of November 20th: " Your favor of the nineteenth to hand, and will say that its contents surprised us greatly. * * * The tallow itself is, we are confident, fully up to sample. * * * But as to water, that is another matter; we did not intend to ship you any water, and do not expect you to pay for it. Our representative assured us no watery barrels went forward, as this was a special injunction to watch for water. If, in spite of his care, barrels containing water were sent forward, we are willing to make it good to you. Let us know how many barrels contained water, and what quantity."

To this the plaintiff replied under date of November 22nd: "We have your letter in reply to ours. Accept thanks for prompt reply. As we expected, you think

we are mistaken about tallow not being up to sample. We have never asked you to take our opinion in the matter. We have seen the tallow and compared it with sample, and don't hesitate to say that it is not what we bought. * * We proposed a fair and honorable way to determine whether our claim is just or not, and we trust you will yet see that the best way to settle the dispute is to arbitrate it. * * So, kind friends, we have the sample and the tallow, and are not afraid of the result of any comparison, and you might as well come down to business at once. We have got the evidence that can't be gotten around, and insist on a settlement.''

To this the defendants replied under date of November 23rd: ''We do not wish to do anything unjust or unfair, but we can only say, as we did before, we will reimburse you for water shipped.''

To this the plaintiff replied under date of December 7th: ''*We have not used a barrel of the tallow, and do not intend to until the matter is settled either by arbitration or a lawsuit.* We have no sort of doubts as to what we can prove in a suit, but would prefer to have you settle without going that far. * * Now, as a last proposition to settle the matter peacefully, we agree that, if you will come or send a man to Nashville, and we do not prove the tallow below sample, we will pay the railroad fare both ways. Let us hear from you and oblige.''

To this the defendants replied under date of December 9th: ''Let us know what you consider a fair allowance for the alleged difference in quality. Would rather present you the amount that a trip to Nashville would cost, than expend it for railroad fare, etc.''

To this the plaintiff replied under date of December 12th: ''We received your last letter, and have delayed a few days in answering. We wish you had

agreed to come or send to Nashville, as we do not wish this thing settled on what we say; and, as we think seeing is believing, we would rather have you here to look at it yourself than any man in the world.  However, you are not here; so we put ourselves to the trouble of bringing in several gentlemen and let them sample the stock you sent us.  We enclose their statements, from which you can see the stuff is very bad. * * * *We would prefer that you take the tallow off of our hands and refund our money.  In fact, we would be willing to haul it to the depot for you free of charge.* However, if we keep it, we must have a reduction of $600.  We would add that we paid freight on it to the amount of $231.26, while you only allowed $183.83. *We have not used a barrel of the tallow, and it is very much in our way; so we wish you would decide at once to take it off of our hands.*  We don't think $600 fully covers the loss on it, but are willing to place it at that figure, if that will effect a settlement and prevent the trouble and expense of a law suit."

To this the defendants replied under date of December 13th: "Yours, twelfth, to hand.  Please express at our expense a sample of the tallow drawn from say twenty-five barrels, and in quantity say ten pounds, and oblige."

To this the plaintiff replied under date of December 18th: "At your request we send 10 pounds of samples of the tallow.  Our soapmaker says he took it from 35 different barrels."

To this the defendants replied under date of December 24th: "Yours 18th to hand, also sample.  To end this matter, we will make an allowance of 1-4 c. per lb. on the tallow, and also collect and repay to you the overcharge in freight.  Send us the freight bill you paid, so we can make claim on R'y Co., and your sight drafts for these two amounts will be honored."

Only such portions of the above letters are set out herein, as bear upon the present inquiry.

After the receipt of the last letter the plaintiff placed the claim into the hands of an attorney, who, under date of December 30th, wrote to the defendants as follows:

"The Enterprise Soap Works Co., of this city has turned over to me the correspondence touching a contract for 150 barrels prime tallow, with instructions to work out for the Co. their rights in the matter. Now, from the facts as I gather them, there is no doubt that the contract was an executory one, and that the E. S. Wks. has the right to inspect the goods and reject them, if not up to the quality contracted for. And inasmuch as the contract is executory, the only remedy of the E. S. Wks. is to reject the goods; for by accepting them with the knowledge of the defects would be to waive the defects. But, inasmuch as they have already paid for the goods, they would rather lose something in a compromise of the matter, than to incur the risks and delay of litigation. *What they desire most is to get back their money, and you take your goods.* In that event they will take their money without interest, and put the goods on cars without charge to you. If you would prefer to let them take the goods and deduct $600 from the price of the goods and repay to them that amount, they will settle the matter that way. If you are not willing to either of these propositions, then the only thing left to the E. S. Wks. will be to proceed to sue— *have the tallow sold by order of the court, apply the proceeds to the costs and amount due E. S. Wks. from you, and hold you for the balance.* This I am instructed to do, unless you do one of the other of the two things mentioned above. Please let me hear from you at once."

To this letter the defendants replied, their letter bearing date December 31st, but not being mailed until some time thereafter, as follows:

"Yours of the 30th noted. As we also wish to avoid unpleasant litigation, we are willing to make a concession within reason. But, rather than allow $600, we will take the chances of the courts."

Upon a receipt of this last letter the plaintiff instituted suit by attachment against the defendants in Nashville, and caused the writ of attachment to be levied upon the one hundred and fifty barrels of tallow in its possession. The plaintiff's attorney mailed a copy of the publication made in that suit to the defendants. Whether the defendants received this notice is not quite clear, but it stands admitted that they had notice of the pendency of the attachment suit, brought by the plaintiff against them at Nashville, before its termination.

Upon the written evidence above set out, the inference is unavoidable that the plaintiff did everything it was required to do to enable it to claim a rescission of the contract. It is true the plaintiff had *received* the tallow, but there is no expression in any of its letters which could be tortured into an admission that it had *accepted* it. The difference between these two propositions is too well settled in the law of sales to admit of any dispute. Benjamin on Sales, sections 1345, 1346; *Gaibout v. Clark*, 24 Mo. App. 426; *Calhoun v. Paule*, 26 Mo. App. 274. We concede that the vendee must exercise his right of non-acceptance within a reasonable time, but the delays in this case were owing to the acts of the vendor, and not to those of the vendee; hence the case is lacking all elements which would enable the court to declare as a matter of law that the ultimate refusal on part of the vendee to accept the goods, and the institution of the suit for a recovery of

the purchase money, did not occur within a reasonable time.

Equally untenable is the further objection made by the defendants, that there was not at any time a tender on part of the plaintiffs to return the goods. Such a tender is distinctly made in plaintiff's letter of December 12th. Besides, it appears from all the evidence not only that the tender made was unavailing, but that a more specific tender, *if made*, would have been equally unavailing. Where it conclusively appears that a tender, if made, would have been fruitless, it need not be shown. *McManus v. Gregory*, 16 Mo. App. 375; *Harwood v. Diemer*, 41 Mo. App. 48.

We must, therefore, hold that the court committed no error in submitting to the jury only the questions whether the plainiff had just cause to rescind the contract, and whether it exercised the right within a reasonable time. If these two elements were found by the jury, it resulted as a matter of law from the writings in evidence that the plaintiff had rescinded the contract.

Complaint is also made of the instructions of the court on the measure of damages. The uncontroverted evidence showed that the plaintiff had caused the defendant's goods to be attached at Nashville and to be sold on execution, and that it realized upon such sale a certain amount, which the court directed the jury to credit to defendants in case they found for the plaintiff. This the jury did. The defendants now claim that the court should have directed the jury to allow to the defendants the reasonable market value of such goods at Nashville, and not the net proceeds of their sale. This contention is devoid of all foundation. This action is for money had and received, and the defendants are entitled to such credits only as they or their property have paid to the plaintiff in money or its equivalent. The case stands exactly upon the same

footing as if plaintiff had levied its execution on other property of the defendants than the one in controversy, and had realized a certain amount upon such sale. It is not claimed that the court in Nashville did not have jurisdiction to have the property subjected to plaintiff's process, nor that there was any illegality in the sale under that process; hence any analogy with the rule in cases of a conversion of goods is wholly inadmissible.

Seeing no error in the record, we affirm the judgment. All the judges concur.