# J. W. DUNCAN, Appellant, v. HOME CO-OPERATIVE COMPANY, W. B. SULLIVAN and RAYMOND PICQUET.

**Division Two, June 8, 1909.**

1. **MORTGAGE: Valid Debt: Cancellation: Trustee Owner of Debt.** A deed of trust, given to secure a part of the purchase price of real estate, will not be cancelled and foreclosure denied altogether, simply because the trustee has become the owner of the indebtedness, nor will foreclosure be postponed so long as the *cestui que trust* remains trustee.

2. ————: **Redemption: Reasonable Time: Six Months.** Where the foreclosure sale under the deed of trust was properly set aside because the trustee who had become the owner of the mortgage contract himself purchased at the sale through a mere figurehead, a reasonable time should be given the mortgagor to redeem; and what is a reasonable time is to be determined by the chancellor, and unless there is an abuse of his discretion the judgment will not be reversed because a longer time was not granted. There is no rule that compels a court of equity to give at least six months in which to redeem. [Distinguishing Stephenson v. Kilpatrick, 166 Mo. l. c. 270.]

3. ————: ————: **Payment by Installment: Tender of All Due.** Where the deed of trust provided for payment by monthly installments and that all should become due upon default in any one of them, and the owner of the indebtedness, who was also the trustee, concealed from the mortgagor all information as to the foreclosure sale, and at the sale bought in the property himself through a figurehead, the court should not only set the sale aside and permit the mortgagor to redeem, but should permit him to redeem upon the payment, within a reasonable time, of the installments due, and the decree should further recite that there should be no foreclosure so long as subsequent installments are paid as they become due.

Appeal from Jackson Circuit Court.—*Hon. W. B. Teasdale*, Judge.

REVERSED AND REMANDED (*with directions*).

*J. W. Duncan, pro se,* and *James P. Gilmore* and *G. W. Stubbs* for appellant.

(1) The action of the trial court in setting aside the sale as fraudulent was correct, and no complaint is or can be made with reference to that part of the decree. 28 Am. and Eng. Ency. Law (2 Ed.), 819; Polliham v. Reveley, 181 Mo. 622; Goode v. Comfort, 39 Mo. 325; Powers v. Kueckhoff, 41 Mo. 430; Graham v. King, 50 Mo. 24; Bales v. Jacobs, 62 Mo. 135; Stoffel v. Schroeder, 62 Mo. 149; Cassady v. Wallace, 102 Mo. 581; Holdsworth v. Shannon, 113 Mo. 520; Harlin v. Nation, 126 Mo. 103; Gambel v. Pignero, 62 Mo. 240; Long v. Long, 79 Mo. 644; Tatum v. Holliday, 59 Mo. 423. (2) The court in its decree should have cancelled the deed of trust, or should have so shaped its decree, in any event, that a foreclosure could not be enforced so long as Sullivan was the trustee and owner of the indebtedness as disclosed by the record in the case at bar. 28 Am. and Eng. Ency. Law (2 Ed.), 764; Gambel v. Pignero, 62 Mo. 240; Long v. Long, 79 Mo. 644; McNear v. Williamson, 166 Mo. 358; Morrison v. Juden, 145 Mo. 282. (3) Inasmuch as plaintiff was out of employment and a large amount had been paid in monthly installments, no default had occurred, and the court should have so found and held in its decree and set the sale aside with that finding, and prevented any further attempt to sell the property under the deed of trust. 28 Am. and Eng. Ency. Law (2 Ed.), 779; Eitelgorge v. Bailey, 82 Mo. 639; Whelan v. Reilly, 61 Mo. 565; Wheless v. St. Louis, 90 Mo. App. 107; Watson v. Gross, 112 Mo. App. 615; McCollum v. Ins. Co., 61 Mo. App. 352; Moberly v. Trenton, 181 Mo. 637; Taylor v. Buzard, 114 Mo. App. 622. (4) The answers of the defendants were utterly bad pleadings (and especially that of defendant W. B. Sullivan, the real defendant in the case), and the allegations of plaintiff's petition stood confessed, and the trial court

should have so treated said allegations, and given a full decree setting aside the sale and cancelling the deed of trust, and as this court may try the case *de novo,* it should now so treat the pleadings and make a finding and enter a decree in accordance therewith. Long v. Long, 79 Mo. 644; Snyder v. Free, 114 Mo. 360; Young v. Schofield, 132 Mo. 650; Boles v. Bennington, 136 Mo. 522; Dezell v. Fidelity & Casualty Co., 176 Mo. 253; Blount v. Spratt, 113 Mo. 48; McElroy v. Maxwell, 101 Mo. 294. (5) In any event, plaintiff should have been permitted and only required to pay the amount of the past due monthly payments falling due on August 10, 1904, and each month thereafter until the rendition of the decree. 28 Am. and Eng. Ency. Law (2 Ed.), 779; Philips v. Bailey, 82 Mo. 639; Whelan v. Reilly, 61 Mo. 565. (6) Even if the trial court can be held right in foreclosing the trust deed, a longer time than sixty days should have been given for payment, and the time therein given should not have been in any event less than six months. Stephenson v. Kilpatrick, 166 Mo. 262.

GANTT, P. J.—This is a suit brought by the plaintiff against the defendants in the court below for the purpose of setting aside a trustee's sale, and to have the deed of trust declared null and void, and for such other relief as equity might require.

The situation grew out of three contracts originally between John W. P. Allin and the Home Co-Operative Company, a copartnership organized by certain parties of Kansas City, Missouri, for the purpose of securing homes for its various contract-holders. The Home Co-Operative Company was a copartnership, created by articles of agreement on May 9, 1901. The articles of copartnership provided that the chief place of business should be Kansas City, Missouri, but that branch and local offices might be had at any place that would facilitate the business of the com-

pany, and contracts made with persons anywhere in the United States. There were provisions in the articles of copartnership whereby a partner might retire and new members be substituted for others. It was, however, agreed in the articles of copartnership that any new member admitted to the partnership should agree and bind himself to become liable for all obligations of the company, the same as though he had been a member from the beginning, and any one who became a member by purchasing the interest of any member should likewise bind himself to and for all obligations of the company at the time of becoming a member of the company.

It was also provided in the articles that *seven members* should constitute a quorum for the transaction of business.

The scheme of business contemplated that persons could purchase contracts from the Home Co-Operative Company, and by the payments therein provided for, become entitled, upon what is designated as the maturity of the contract, to have a home purchased for him by the company. The contract-holder was to pay a certain amount in proportion to the number of contracts he had.

The character of the contract is fully set forth in the record.

In May, 1901, John W. P. Allin took three of these contracts from the Home Co-Operative Company, numbered *ten, eleven* and *twelve*. These contracts were between the Home Co-Operative Company and John W. P. Allin, and *with all other parties who made like contracts of co-operation with the parties.* The scope of the contract, therefore, was such that it was not only between the Home Co-Operative Company and the party to the particular contract, but was likewise with all other parties holding similar contracts. The contract further provided that whenever there should be accumulated fifty dollars from

Duncan v. Home Co-Operative Co.

the payment of the sums of $1 on the contract, and like contracts made subsequent thereto, the particular contract having the lowest number should be deemed to have matured, and the owner of the contract should be entitled to an installment sum of $50, to be applied upon a home for such contract-holder until the sum of $1,000 should be paid.

The contracts further provided that they might be assigned in writing, and also that if the party to the contract, or his assignee, was unable to pay by reason of loss of employment, a forfeiture should not be declared before the time of his last payment equal to the time of payments already made on the advancements.

Allin's contracts matured some time in December, 1902; the property in question was purchased on his behalf. A purchase contract was issued to him, and prior to the time of the execution of the trust deed involved in this suit, the contract took the place of a deed of trust and was held in escrow. On April 10, 1903, Allin made, executed and delivered a deed of trust conveying the property to W. B. Sullivan, as trustee for the Home Co-Operative Company, said deed of trust taking the place of the arrangement theretofore existing. The deed of trust made the terms of the contract hereinbefore referred to a part thereof, and provided for a monthly installment payment of $16.05 on or before the tenth day of each month until paid. The deed of trust also provided that in case of death, inability, refusal to act, or absence from Jackson county, Missouri, of the trustee, W. B. Sullivan, then the sheriff of Jackson county, Missouri, should become his successor.

The deed of trust contains the provision that if the grantor should be unable to pay his monthly installments by loss of employment, a forfeiture of the agreement should not be declared before the time after the last payment equal to the time of payments paid

on the obligation secured thereby.  It appears from the record that prior to the time of the execution of the deed of trust involved in this suit, the original constituency of the Home Co-Operative Company sold out to the said W. B. Sullivan and two other parties from St. Louis.  The deed of trust contained a provision that if Allin failed to pay the installments for thirty days after one became due, then all other payments at the option of the holder of the note and deed of trust should become due and payable and be .forfeited and the lot sold by the trustee or in his absence by the sheriff.

It further appears from the record, however, as testified to by Sullivan himself in a deposition which was introduced at the trial of the case, that Sullivan became, or attempted to become, the absolute owner of the business of the Home Co-Operative Company in January, 1903.  After this purchase of property by Sullivan, the deed of trust involved in this case was given, making Sullivan the trustee.

On June 22, 1903, the plaintiff in this suit, John W. Duncan, purchased this lot from Allin by a general warranty deed, subject to the deed of trust, which Duncan assumed and agreed to pay.  The deed of trust as made by Allin was to secure the payment of $3,200 less $315 then to the credit of Allin as payments on the property.  It also appears that in June, 1903, the plaintiff, Duncan, paid upon the indebtedness the further sum of $200, and thereafter, in July, 1904, the further sum of $32.10.

For a time after Sullivan purchased the property he maintained an office in Kansas City as originally contemplated by the articles of copartnership of the Home Co-Operative Company.  Subsequent to the payment made by Duncan in July, 1904, and prior to default in the installment payments, Sullivan discontinued any office of the Home Co-Operative Company or of himself, in Kansas City, Missouri.  Prior to

the time of discontinuing the office in Kansas City, there was some evidence that the Home Co-Operative Company had been refused the use of the mails. It appears that there had been some conversation between the plaintiff and Mr. Steele, who had represented Sullivan and the Home Co-Operative Company as an attorney in the examination of abstracts, with a view to a possible foreclosure of the deed, as the plaintiff at that time desired to sell the property, and could not obtain the consent of his wife to join in the deed conveying the equity, and had been advised by an attorney that this method might be followed. This plan was abandoned. It also appears that the plaintiff sought on one or two occasions to ascertain when Sullivan would be in town. The record shows that Sullivan did not leave any directions as to how he could be reached, or as to how payments could be made, but no effort was made by plaintiff to make said payments or to find Sullivan's address. Sullivan made arrangements with Mr. Steele to publish the notice of sale and the record shows that while the publication was running the plaintiff had some conversation with Steele with reference to the property and with reference to Sullivan's coming to Kansas City, but nothing was said to him by Steele as to the intended foreclosure.

The plaintiff testified he had made arrangements by which a sale of the property could be consummated, and visited Mr. Steele with reference to the same, and then for the first time learned that the property had been published and sold. The property was sold as a matter of form to Raymond Picquet, who was not present and was evidently acting on behalf of Sullivan, as found by the court.

Prior to the sale, the plaintiff on about November 1, 1904, saw Mr. Steele and inquired when Mr. Sullivan would be in Kansas City. According to plaintiff, this

was at the time when the notice was running, and Mr. Steele did not advise plaintiff of the fact, though the property was advertised, but Steele denied that such was the fact.

The evidence tended to show that the plaintiff was never advised where payments could be made to Sullivan after the offices were discontinued at Kansas City, Missouri, but on the other hand, he wrote Sullivan and made no effort to pay the defaulted installments.

Plaintiff, after discovering the sale, promptly brought the suit at bar to set the same aside, charging, among other things, conspiracy between Sullivan and Picquet to cheat and defraud the plaintiff out of his rights in the property; that no forfeiture had been made, and that they well knew that there was no forfeiture; that the Home Co-Operative Company was a fraudulent concern, and was denied the use of the mails, and that the plaintiff could not pay at St. Louis, even if he had been required to do so by the terms of the contract; that Picquet was not an innocent purchaser of said property, but purchased it really for W. B. Sullivan himself; that Sullivan was a resident of St. Louis, Missouri, at the time of the alleged forfeiture, and was not competent to act as trustee. These are some of the salient allegations of the petition.

The petition asked in the prayer that the sale be set aside, and that the trust deed be cancelled, and for such further relief as justice and equity might require. The answer of W. B. Sullivan, also designated as the answer of the Home Co-Operative Company, denied each and every allegation set out in plaintiff's petition, except as herein admitted. It then admits that Allin was the owner of the three separate contracts entered into by and between Allin and the Home Co-Operative Company; admitted that Allin was the owner of the property as set out in plaintiff's

petition, the entire purchase price of which was paid by defendant company, and that Allin gave the deed of trust involved to secure the balance due from said Allin; and by reason of default in all monthly payments since July, 1904, the trustee did on the 23d of November, 1904, sell the property, averring that the sale was made at public vendue to the highest bidder, and in strict compliance with the statutes of Missouri, and prayed to be dismissed.

The main contest was between plaintiff and Sullivan as Picquet was a mere figurehead in the whole transaction.

The evidence showed, and the court so found, that Allin had paid on the amount of the indebtedness $315, and that the plaintiff had paid $232.10. The indebtedness bore no interest. The evidence tended to show that the property was worth $4,000 or more, and the court found it to be worth $4,000. At the sale the property was struck off for $1,005.

The court, after finding the ownership of the property in Allin and Duncan, as herein briefly stated, and the amounts paid by Allin and Duncan, also made a finding in its decree that the monthly payments falling due on August 10, 1904, and thereafter, were not paid upon the said indebtedness, and thereby a default occurred as found in its decree. The court also found that prior to the sale of said real estate by said W. B. Sullivan as trustee, said Sullivan was the owner, or one of the owners of the property of the Home Co-Operative Company, and as such was the beneficiary therein, and that said real estate was in fact purchased by and for the benefit and to the use of said W. B. Sullivan, and the name of said Raymond Picquet was used solely and only for the purpose of giving color or right and authority for the sale and conveyance so made. The court in its decree set aside the sale as fraudulent, and then further decreed that the plaintiff be permitted to redeem the premises above described

from the lien of the deed of trust by paying to said W. B. Sullivan within sixty days from and after the date of the decree, the sum of $2,637.90, and that if that sum should not be paid within the time the property should be sold by the sheriff of Jackson county at public sale, after twenty days' notice. Then followed the usual disposition of the proceeds of the sale.

The plaintiff, being dissatisfied with the decree, filed a motion for a new trial, as did also the defendants, but the latter was withdrawn. The court overruled the motion for new trial, and the plaintiff brings the suit here by appeal.

I.   No appeal was taken by defendants from the decree of the circuit court setting aside the sale and deed made by defendant Sullivan to Picquet, and to that extent the decree must stand. It is obvious, we think, that the circuit court set aside the sale and deed on the ground that Sullivan, the trustee, was a member of the copartnership to which Allin's debt was originally made which plaintiff assumed, and made the sale to himself secretly, though using Picquet's name as purchaser and grantee in the deed. It is absolutely certain that Picquet was not present when the sale was made and knew nothing of it and did not pay any part of the bid. Sullivan merely took this method of having the title eventually conveyed to himself and the court properly held the sale was fraudulent.

But plaintiff was not satisfied with the decree and insists that the circuit court should have cancelled the deed of trust altogether or decreed that no foreclosure could be enforced so long as Sullivan was the trustee and owner of the indebtedness. By reference to the statement and testimony, no doubt can be entertained that the copartnership, known as the Home Co-Operative Company, furnished the money and purchased the

real estate covered by the deed of trust and conveyed or caused the same to be conveyed to Allin and that Allin owed the firm this debt for the purchase money and that Allin sold the lot to plaintiff and plaintiff assumed and agreed to pay this debt. Whatever Sullivan's relation to the Home Co-Operative Company as between himself and its contract-holders, it affords no ground for plaintiff's effort to repudiate his debt and appropriate this property free of the claims of Sullivan or the creditors of the Home Co-Operative Company. It is no less plaintiff's debt because Sullivan may be and had been decreed simply the agent or trustee of the fund for the benefit of the creditors and contract-holders of the Home Co-operative Company; on the contrary, it furnishes a stronger reason why this asset of the company should be preserved. No fraud was perpetrated on plaintiff. He bought the lot, obtained his title and undertook and agreed to pay this encumbrance. He had not paid his installments and the holder of the debt was entitled to have it foreclosed. At that time Sullivan appears to have held the legal title to the indebtedness and while, as the circuit court properly found, his sale was irregular and set aside, there was absolutely no pretence that plaintiff did not owe the balance of the mortgage debt or that he complied with his obligation either legally or equitably. He came into court and asked to be allowed to redeem and the circuit court gave him relief by decreeing that the sale and deed made by Sullivan be set aside and annulled on condition that plaintiff pay the balance of said debt to Sullivan in sixty days and if plaintiff should not pay the same at that time, then the premises should be sold by the sheriff after due and legal notice, and, out of the proceeds, the sheriff should first pay the costs of this cause and the sale, and next, the debt to Sullivan, and the remainder to plaintiff. That the decree was just and equitable, in so far as it imposed as the price

of the redemption the payment of the balance of the debt due by plaintiff, it seems to us there can be no two opinions among honest men. The only questions which can arise are those raised by counsel for plaintiff, that the court should have allowed a longer time to redeem and that the court should not have required the payment of the whole balance but the sum of the installments past due at the date of the decree.

As to the time for redemption, it was said by Judge SHERWOOD in Stephenson v. Kilpatrick, 166 Mo. l. c. 270: "It is not improper to add that courts of equity usually give *six months* in which to redeem and that it is not customary to give so short a time as *thirty days* in which to redeem." This is far from holding that in every case, irrespective of conditions, a court of equity must give at least six months in which to redeem. In our opinion there is no such fixed time but it must be left to the wise discretion of the chancellor who tries the case and unless that discretion is abused it will furnish no ground for a reversal of the judgment. The failure to give more than sixty days was not urged as a ground for new trial. The case was not tried on that theory, and the judgment should not be disturbed on that ground.

II. We are thus brought to the further contention that the court should have only required plaintiff to pay the amount of the past due monthly payments falling due on August 10, 1904, and each month thereafter until the rendition of the decree. In support of this contention we are cited to Whelan v. Reilly, 61 Mo. 565, and Philips v. Bailey, 82 Mo. 639. In the first of these cases, it was held by the court that where by the terms of a deed of trust, on failure to pay the interest notes as they matured, the whole amount of principal and interest forthwith became due and the trustee was empowered to sell and for default in pay-

ment of a portion of the interest notes, he proceeds to sell, the debtor may, on proof of tender to the trustee, before sale, of the amount then due together with costs accrued, have the sale set aside in equity, and the refusal of the trustee to receive the money may amount to oppressive conduct which will authorize a decree for that reason alone, regardless of the question of tender, on payment of the notes matured at the date of the decree and proper costs. In Philips v. Bailey, 82 Mo. 639, the debtor tendered the trustee on the day of the sale, and before the sale, the interest due and the costs and expenses of advertisement and the commission, all that was claimed except the principal of the debt and attorney's fee provided for in the deed of trust. Upon this showing, the sale was set aside, this court, citing and approving Whelan v. Reilly, supra. In each of those cases the tender of the interest due and the costs accrued was held to be the essence of the equity for setting aside the sale. In this case no tender was made before the sale, but the plaintiff's evidence tended to prove he was entirely ignorant of any intention to sell at that time; that he had never seen the advertisement of the sale and consequently he had no opportunity to make the tender of the accrued installments, and for aught we know this may have been one of the grounds upon which the circuit court set aside the sale.

In his bill to redeem, the plaintiff alleges that "ever since he has had knowledge of the sale of said real estate by defendant, Sullivan, as aforesaid, plaintiff has been willing and ready and hereby offers to pay upon the debt secured by said deed of trust whatever amount was or is due thereon under the terms of said contract and plaintiff now here offers to pay thereon whatever amount this court shall find to be due and direct to be paid thereon and asks if any amount shall be found due upon said debt secured by said deed of trust that he may be permitted to redeem

said real estate from said sale.'' While it is competent for parties to make their own contracts and while, notwithstanding the onerous conditions which those who loan money sometimes impose, sales will be upheld where there is no fraud or imposition practiced, yet courts of equity have ever taken a broad and humane view of the obligations of a mortgagor and have leaned against the harsh remedies which are often invoked against him and are inclined to protect him, so long as they can justly do so, and without impairing the obligation of his contract with the mortgagee. According to the strict letter of the deed of trust, plaintiff has forfeited his right to pay the balance of the debt in installments, but the fraudulent conduct of Sullivan entitled him to have the sale set aside. When the court decreed the sale was fraudulent and should be set aside, then it seems to us that every demand of justice and equity would have been satisfied by the further decree that the past due installments should, within a reasonable time fixed by the court, be paid, and if so, then Sullivan could not foreclose the deed of trust so long as plaintiff should thereafter meet and pay the installments as they fall due.

This view of the equities of the case was urged upon the circuit court in the petition and was renewed in the motion for a rehearing, and in our opinion, the court erred in denying this prayer of the petition, and its decree should be modified to that extent.

Before this cause was tried in the circuit court, it appears from the intervening petition of Louis Schubert, a creditor and contract-holder of said Home Co-Operative Company, that on the 3d day of July, 1905, one Herman H. Wehrs, also a contract-holder, filed his petition in the circuit court of St. Louis county, in the nature of a general creditor's bill, in behalf of himself and all other creditors and contract-holders against said company and William B. Sullivan, for

the purpose of winding up said company and having its assets declared a trust fund for its contract-holders and creditors, and on said date an interlocutory decree was made and entered in accordance with the prayer of the petition, and Francis Tillman was appointed receiver of all the assets and property of said company, wheresoever situated, and said Sullivan, his agents and servants and the agents and servants of said company were ordered to make all necessary assignments and transfers of all said assets to said Tillman as receiver; and afterwards on October 3, 1905, a final decree was entered in the said cause confirming said receivership in all respects; that afterwards said Tillman was removed and William Watkins was appointed receiver in his stead; that Sullivan appealed from the order removing Tillman and this court affirmed the judgment of the circuit court removing Tillman and appointing Watkins, and this court is now asked to permit said Watkins to intervene in this cause, for the purpose of protecting the assets of said company, and being now fully advised it is ordered that said William Watkins be and he is hereby made a party to this suit and permitted to represent the rights of the said company in this suit, which have heretofore been represented by said Sullivan, and he is substituted as receiver of said company to all the rights of said Home Co-Operative Company and said William B. Sullivan herein and empowered to collect and receive any and all moneys and property due said company from plaintiff by virtue of said deed of trust, and to take all proper steps to collect the same.

The decree of the circuit court is reversed and the cause remanded with directions to the circuit court to modify its decree by taking an account of all the installments due from plaintiff on said debt up to the time of taking said account, and then decree that if plaintiff shall by a day and time fixed by the

court, not less than sixty days, pay said delinquent installments to said receiver Watkins, the said deed of trust shall not.be foreclosed so long as plaintiff shall thereafter comply with the terms of said deed of trust and pay the said installments as they fall due, but if plaintiff shall fail and neglect or refuse to pay said installments from time to time as they shall become due and payable, then the said receiver may request and require the sheriff of Jackson county to sell said lot and real estate at public vendue as provided in said deed of trust and out of the proceeds satisfy first the costs of said sale and next the balance of said mortgage debt and then pay the balance to plaintiff. *Burgess* and *Fox, JJ.,* concur.