Louis Leone, Appellant, v. John W. Bear and Edna H. Bear, and Joseph J. Sullivan, Trustee, Respondents, No. 42070—241 S. W. (2d) 1008.

Division Two, September 10, 1951.

*Joseph Boxerman* and *Joseph Nessenfeld* for appellant.

466

*Frank W. Jenny* and *James A. Cole* for respondents.

467

BOHLING, C.—Louis Leone, offering to do equity, sued Joseph J. Sullivan, Trustee under the deed of trust hereinafter mentioned, and John W. Bear and Edna H. Bear, husband and wife, purchasers at said trustee's sale, in equity to set aside the sale under the deed of trust and to cancel the trustee's deed executed pursuant to said sale. Defendants Bear, in addition to denying Leone's claim, asked that the fee simple title to the real estate be decreed in them. Judgment was for the defendants, dismissing the petition with prejudice. Leone appeals and charges error in the Chancellor's findings that he was not a part owner of the real estate subject to said deed of trust; that no proper offer to redeem said real estate had been made; and that a deed from the mortgagor to him within twenty days after the sale was ineffectual to vest any right in him to attack said sale on equitable grounds.

Clyde Roberts had offered to purchase a farm in Warren county, Missouri, owned by the Bears; and in July, 1948, he came to the Bear home in Kirkwood, Missouri, bringing Leone with him. An earnest money contract for the purchase of the farm was executed by Bear and Roberts. Leone signed this contract as a witness. The sale price was $20,000; with $6,000 to be paid in cash ($1,000 being paid upon the execution of the contract), and the Bears were to take back a deed of trust on the land securing the $14,000 balance.

Leone gave his check, dated July 17, 1948, for $1,000 payable to Bear, who endorsed it as evidencing the earnest money payment.

Leone had a real estate office in St. Louis. The transaction was completed there. The Bears executed their deed to the Roberts. Clyde Roberts and Norine Roberts, his wife, executed their notes and

their purchase money deed of trust securing the $14,000, principal amount, balance due. There were twenty notes, bearing interest after maturity, dated August 15, 1948, payable to the Bears serially, one each six months, the first being for $1,050 ($700 principal plus interest), each note ▆▆▆▆ being for $17.50 less than the note preceding it in order of maturity. Leone gave his check, payable to Bear, for $4,955, representing the $5,000 cash payment after adjustments.

The notes had no acceleration clause, and did not refer to the deed of trust. The deed of trust, however, provided that upon default in the payment of any note or interest, or failure to pay any tax, all of the notes became due.

Leone testified that he told Bear, at the time the earnest money contract was executed, Roberts and he were buying the farm, he was advancing the money and was responsible for the payment of the notes, and Bear should let him know where to pay them. On cross-examination he stated he did not tell Bear he was claiming an interest in or purchasing a part of the farm when the contract was signed. He also testified that when the transaction was consummated he told Mr. and Mrs. Bear he was buying part of the land, Roberts and he were purchasing the farm as partners, but the title was being taken in the name of Clyde Roberts; and that he, Leone, was to advance the money and pay the notes when they became due.

Bear denied that Leone ever told him he was claiming any interest in the farm or that he was responsible for and would pay the notes, or that he should let Leone know where to pay the notes, and that the first he knew Leone was claiming an interest in the farm was when he received notice of this suit.

Roberts lived at Wright City. Bear informed Roberts he would leave the $1,050 note due February 15, 1949, at the Farmers and Merchants Bank at Wright City, and make it convenient for Roberts to pay it. Roberts informed Leone, and Leone went to the bank, gave his check for $1,050, payable to John and Edna Bear, and received the note. The check is endorsed by the Bank as credited to the payee's account.

Thereafter Roberts and Leone had trouble and engaged in litigation. The Bears had moved to Arkansas. Bear sent the $1,032.50 note, due August 15, 1949, to the bank for collection. Bear received a letter from Roberts to the effect that Leone had failed to pay an obligation due Roberts on property at Creve Coeur, Mo., and Roberts would be unable to make payment. The $1,032.50 note was not paid.

In the latter part of August, 1949, Bear, while in St. Louis called at Leone's office. The evidence is conflicting as to what occurred.

Leone testified that he did not know where to get in touch with Bear; that Bear came to see him about the $1,032.50 note, stating he was going to foreclose if it were not paid; that he offered to pay the note; that Bear said he was going to ask the full amount of the in-

debtedness, demanded the full amount for the farm; that Bear said he would refinance the loan and would get in touch with him later, but never did.

Bear testified that he went to Leone's office after receipt of Roberts' letter to find out the status between Roberts and Leone, "which had been a mystery, more or less"; that all they discussed was the situation between Leone and Roberts; that Leone never offered to pay the $1,032.50 note; that he told Leone all the notes were due but did not say their payment was the only payment he would consider; and that Leone made some suggestion about refinancing the farm but he did not promise Leone he would refinance it or anything, telling Leone he was dealing with Roberts.

The Bears held all the notes and caused the land to be advertised under the deed of trust for sale on October 8, 1948.

Bear and Joseph J. Sullivan, Bear's brother-in-law and the trustee in the deed of trust, were in Warrenton, Missouri, for the foreclosure sale.

Leone, Roberts and Gus Spinaio, a relator who had a desk in Leone's office, met Bear and Sullivan at the Courthouse a short time before noon. Again, the testimony conflicts.

Leone testified he told Bear he came to see about the foreclosure, stating "I don't ▮▮▮ see why you want to foreclose it after I put in so much money, and will take care of this thing. I want to pay the note and expenses of the advertising and the interest, and I have got the money here to pay you"; that Bear told him "he was going to ask for the full amount and not to even talk to him, that he wasn't going to take any money." Leone also testified he had $1,500 cash with him; that he knew the note was for $1,032.50, but did not know what the advertising expense and interest amounted to; that he exhibited his money to Bear and told him he would pay the amount due; that Bear mentioned the taxes on the land and he also offered to pay them; and that Bear told him to pay the balance due on the purchase price or not to talk to him.

Gus Spinaio corroborated Leone as to what occurred between Leone and Bear at the courthouse with respect to Leone wanting to pay the note, interest, costs, and taxes, and offering the money to Bear, and Bear stating he did not have to take it because the loan was due and, having gone that far, he was going through with the foreclosure. He also testified that Leone and Bear "got warmed up," especially Leone, and he, Spinaio, told Bear that if a mortgagor wanted to pay all delinquencies and expenses, "it is right to call the foreclosure off"; that Bear said his deed of trust provided that "when there was a delinquency in one note, the whole thing came due" and he would be a fool to take the amount of the loan when he could get a lot more for the farm; and that Bear wanted Leone to pay "the full amount of the loan and everything."

470

Bear testified that Leone did not on October 8, 1949, or at any other time offer to pay the $1,032.50 note, costs and taxes; that Leone did not say he came to talk about the foreclosure and wanted to pay the $1,032.50 note, expenses and interest, and he, Bear, did not tell Leone not to talk to him or that he would not "take that money"; that no money was produced at all; and that he never told Spinaio he, Bear, would be a fool to take the money, he could get a lot more for the farm.

Bear testified: "* * * first of all, these two gentlemen came up to us, Mr. Sullivan and I were sitting out on this bench, and *they did, of course, bring up* the subject of *the foreclosure sale, and asked* us a question of *how much was due,* which had been previously discussed with Roberts, *and I did tell them that* the deed of trust provided that *all of the notes became due if one was unpaid,* and that also because of unpaid taxes, *and that that was the amount that would be required to be paid* * * *. After I told them the amount they became - - * * * this other man, Spinaio, became very, very hostile and in fact, although there were others present here, I was almost afraid physically, and we may have got up and started away, but I did stop the conversation when their attitude became so hostile and they used some rather rough language."

Asked on cross-examination whether he testified in chief that, when Leone asked him what amount he had to pay to stop the foreclosure, he explained all the notes and delinquent taxes were due under the deed of trust and he told Leone the amount he would have to pay, Bear answered: "Yes, sir. Well, I said that I told him approximately. I didn't give him the exact dollars, but it was within a few dollars of what it was."

"The Court: What he is asking you is you were wanting your entire debt evidenced by the deed of trust? A. That's correct.

"The Court: Plus your expenses? A. That's right.

"The Court: That is what you were asking? * * *

"A. I wouldn't have asked the delinquent taxes if they paid off all the notes. All I wanted was the balance of the money that was due on the farm."

Also: "*When I told them the amount,* the fact that all the notes were due, it was the same thing I had told Roberts two or three times, and Roberts was with them, and *they began to berate me for my attitude.* They said my attitude was wrong, *so I* just closed the discussion and *walked away.*"

 Sullivan testified that Leone offered no money to Bear or him on October 8, 1949, and neither did Spinaio to his knowledge.

Leone, Roberts and Spinaio went to A. H. Juergensmeyer's, the prosecuting attorney's office, and had a notice of intention to redeem executed by Roberts. According to Bear, a short time before the sale Roberts handed a copy of said notice to Sullivan and a copy to him.

They read it, and after waiting for an offer of payment and receiving none, they proceeded with the sale.

At the foreclosure sale, October 8, 1949, defendants Bear bid in the farm for $5,000; and on said date Sullivan, the trustee, executed and delivered his trustee's deed to said purchasers. The litigants proceeded upon the theory the farm had a value of approximately $20,000.

On October 26, 1949, within twenty days of the foreclosure sale, Clyde Roberts and Norine Roberts, his wife, conveyed the land to Leone by quitclaim deed for a recited consideration of $100.

This suit was filed on October 28, 1949.

· The redemption bond required by § 3451, R. S. 1939 (§ 443.420, R. S. 1949) was not given.

■ Leone contends a resulting trust in the land arose by reason of his payments on its purchase price. Condit v. Maxwell, 142 Mo. 266, 274, 275, 44 S.W. 467, 469; Shelby v. Shelby, 357 Mo. 557, 562, 209 S. W. 2d 896, 899[1]; Padgett v. Osborne, 359 Mo. 209, 213, 221 S. W. 2d 210, 212[3]. The parties agree that a resulting trust must be established by evidence so clear, cogent and convincing as to remove any reasonable doubt as to its existence. Dee v. Sutter, Mo. App., 222 S. W. 2d 541, 543[5], reviewing cases. The trial Chancellor was not convinced of Leone's claim of a resulting trust.

■ Upon reviewing the evidence de novo on the issue of fraud, we reach the conclusion that a preponderance of the evidence, including that of Bear, sustains the contention of Leone (Proffit v. Houseworth, 360 Mo. 947, 231 S. W. 2d 612, 617[3]; Shaw v. Butler, Mo., 78 S. W. 2d 420, 421[2, 7]); and we may pass the issue involving a resulting trust, requiring a high degree of proof (Scheer v. Gerleman, Mo., 221 S. W. 2d 875, 880[1-3]).

■ The Bears contend Roberts' deed to Leone of October 26, 1949, transferred to Leone only the statutory right to redeem upon giving the statutory bond, and did not vest in him any right the Roberts might have had to set aside the trustee's sale for fraud. Jones v. Babcock, 15 Mo. App. 149, 151; Ryan v. Miller, 236 Mo. 496, 510 et seq., 139 S. W. 128, 131, 132, Ann. Cas. 1912D, 540; Bullock v. Gee Land Co., 347 Mo. 721, 732, 148 S. W. 2d 565, 570[9]; De Tienne v. Peters, 354 Mo. 166, 169, 188 S. W. 2d 954, 956 These cases are authority for the principle: "One may purchase a cause of action at law and enforce all legal rights which go with it, but the right to appeal to the conscience of a court of equity cannot ·be bought or sold." With this, we are in accord. But, as expressly recognized in Ryan v. Miller, supra, there is a limitation to this general rule which is succinctly stated in Johnson v. United Rys. Co., 247 Mo. 326, 354, 152 S. W. 362, 368 [6], 152 S. W. 374: "But mark the limitation to the rule. 'Where, however, an assignment is made of subsisting property,' * * 'an incidental right to sue for fraud will pass by the assignment.'" See Bispham, Principles of Equity,

10th Ed., § 166; 6 C. J. S. 1085, § 35b; 4 Am. Jur. 258, § 40. And, as quoted in Ryan v. Miller supra, and also in Johnson v. United Rys. Co. supra: " 'In such a case the assignee is entitled to maintain an action to set aside a fraudulent conveyance of the property assigned, if his assignor might have done so.' "

Wetmore v. Berger, 354 Mo. 158, 188 S. W. 2d 949, is a case in point. In that case a lot brought $3.20 at a tax sale on November 16, 1938, under the Jones-Munger law, and the collector's tax deed was issued August 7, 1942, to Wetmore, the assignee of the certificate of purchase at the collector's sale. In the interim, December 22, 1941, the sheriff sold the lot to Berger for $1,000 under a special tax bill judgment. Berger ▮▮▮▮▮ theretofore was a stranger to the tax bill and the property. The court construed § 11,145, R. S. 1939 (§ 140.340, R. S. 1949) as expressly allowing persons having an interest in land sold under the Jones-Munger law to redeem at any time within two years after the sale, and, by implication, at any time prior to the delivery of the collector's deed. The court held the whole title did not pass at the sale, but such title or interest as would support redemption remained in the owner or his assigns; and that Berger, having acquired this right prior to the delivery of the collector's deed, "had the right to redeem, and he should not be precluded from complaining of any fraud that would vitiate the collector's sale and deed" (188 S. W. 2d l. c. 953 [9-11]), embracing a charge of fraud based on a sale at a price so grossly inadequate as to shock the conscience of a court of equity. See Strohm v. Boden, 359 Mo. 573, 222 S. W. 2d 772, 776 [6].

So far as material here our statutes provide that lands foreclosed under deeds of trust may be redeemed by the grantor "or his * * * grantees or assigns at any time within one year" from the date of sale; provided he give written notice within ten days before the sale of the purpose to redeem, and "within said year pay the debt and interest * * *." R. S. 1939, § 3450, now R. S. 1949, § 443.410.

Also: Such a person does not have the right to redeem "unless he * * * shall within twenty days after such sale give security * * * for the payment" of the debt et cetera. "If the bond is * * * approved the trustee at the purchaser's request shall * * * deliver to him a certificate of sale or purchase * * *. And if redemption is not made * * * he shall thereupon execute to the purchaser * . * * good and sufficient deed of conveyance * * *. The rights, interests and estates of any of the parties may be conveyed by deed as interests in land are conveyed * * *. Any prematurely executed trustee's deed shall operate as a certificate of sale by the trustee * * *." R. S. 1939, § 3451, now R. S. 1949, §§ 443.420, 443.430, 443.440.

By explicitly providing, in the event a bond to redeem be posted, for the trustee to deliver to the purchaser a certificate of sale or purchase and, if redemption be not made within the year, then to

execute and deliver to the purchaser a deed upon the presentation of such certificate, § 3451, supra, implies that when a redemptioner gives notice of his intention to redeem the trustee is not to deliver his trustee's deed to the purchaser pending the lapse of the twenty days allowed for the posting of the redemption bond. The statute authorizes the trustee to deliver a certificate of sale, as is the case in a tax sale under the Jones-Munger law, discussed in Wetmore v. Berger, supra, and specifically provides that "any prematurely executed trustee's deed shall operate as a certificate of sale by the trustee." Consequently, the trustee's deed to the Bears of October 8, 1949, the date of the foreclosure, operated only as a certificate of sale by the trustee. The Roberts, pending said twenty day period, retained their right to redeem and were authorized to convey their "rights, interests and estates" by deed. They did this by their deed to Leone of October 26, 1949. Paraphrasing Wetmore v. Berger, supra, Leone, as the owner's grantee and assignee, "had the right to redeem, and he should not be precluded from complaining of any fraud that would vitiate the" trustee's sale and deed. This factor distinguishes the instant case from cases stressed by the Bears (Jones v. Babcock and De Tienne v. Peters, supra) wherein grantors, having no right of redemption, attempted to convey or assign a mere litigious right to bring an action in chancery to redress a fraud. The distinction is recognized in the De Tienne case (188 S. W. 2d l. c. 955).

A failure to post a redemption bond does not preclude the urging of special equities as the statutory remedy is not exclusive. Potter v. Schaffer, 209 Mo. 586, 597(IV), 108 S. W. 60, 62(4).

It has been ruled in cases wherein the deed of trust contains an acceleration clause making the whole indebtedness due upon default of payment of any of several notes maturing serially but where the notes ▮ do not contain an acceleration of payment provision, as in the instant case, that a payment or a tender of payment of the actual amount in default, plus costs etc., and not necessarily the whole of the secured debt, is sufficient to stop the foreclosure sale under the deed of trust or set it aside by a suit in equity if foreclosure occurs. Wolz v. Parker, 134 Mo. 458, 465, 35 S. W. 1149, 1150; Farrell v. Seelig, Mo. App., 27 S. W. 2d 489, 491[3]; Whelan v. Reilly, 61 Mo. 565, 570; Philips v. Bailey, 82 Mo. 639, 647; State ex rel. v. Ross, 136 Mo. 259, 273, 41 S. W. 1041, 1044; Potter v. Schaffer, 209 Mo. 586, 594(II), 108 S. W. 60, 62(2); Duncan v. Home Co-op. Co., 221 Mo. 315, 327, 120 S. W. 733, 737; Lunsford v. Davis, 300 Mo. 508, 533, 254 S. W. 878, 885[5, 6]. See Brown v. Kennedy, 309 Mo. 335, 274 S. W. 357, 41 A. L. R. 729, where the notes as well as the deed of trust carried acceleration clauses. Among the reasons advanced for the ruling are that to permit a sacrifice of the owner's rights after such a tender would savor of oppression (Potter v. Schaffer, supra); and that the deed of trust is collateral, affecting

474

only the security, and payment of what is due does not endanger or lessen the security (Brown v. Kennedy, supra).

Leone was not a stranger to the transaction involving the deed of trust. His $1,000 check paid the earnest money. His $4,955 check discharged the $5,000 cash payment. Bear endorsed each check. Leone's check paid the $1,050 note due February 15, 1949, and is endorsed by Bear's agent, the bank. Within approximately eight months Leone's checks discharged $7,000 of the $20,000 purchase price. What arrangement existed between Roberts, who took the record title to the farm, and Leone is not disclosed, but whatever it was, whether Leone was advancing the money to Roberts to be repaid later or was obligated to Roberts to make the payments in connection with some other transaction, Leone had such an interest as to apply his checks in discharge of the purchase price of the farm. When default occurred on August 15, 1949, Bear called on Leone to find out about the "mystery, more or less" between Leone and Roberts. Leone stated he offered to pay the $1,032.50 due but Bear denied this. However, Bear admitted he then told Leone all the notes were due, but he did not state what he found out about Leone and Roberts.

Roberts, Leone and Spinaio must have had some purpose in going to Warrenton on the day of the foreclosure sale. Leone and Spinaio testified they sought to stop the sale by paying what was due plus the costs, which was a reasonable purpose with Roberts holding the title and Leone's checks discharging $7,000 of the $20,000 purchase price. Bear testified they asked him and Sullivan what was necessary to stop the foreclosure and he "did tell them" that under the deed of trust all the notes were due and also the taxes, "and that that was the amount that would be required to be paid"; and after repeating that he so stated, he in answer to inquiries by the Court, again testified he was wanting the entire debt evidenced by the deed of trust; that was what he was asking, and that it was the same thing he "had told Roberts two or three times."

It is stated in Westlake v. City of St. Louis, 77 Mo. 47, 51, that "* * * a tender of a smaller sum than that demanded is never necessary where it is apparent from the language used, as in this case, that such tender would be a mere nugatory act, and be met with prompt and peremptory refusal to receive the amount if tendered." Where it appears that a holder of a note will not accept anything less than its face and interest and the tender of a less amount would be unavailing, it is "unnecessary to go through the ceremony of a formal tender." Schilb v. Pendleton, 76 Mo. App. 454, 457. See Huth v. Picotte, Mo. App., 154 S. W. 2d 382, 385; Enterprise Soap Works v. Sayers, 55 Mo. App. 15, 25; Leesburg St. Bk. & Trs. Co. v. Merchants Bk., Mo. App., 142 S. W. 2d 94, 97[9, 10]; Berthold v. Reyburn, 37 Mo. 587, 588, 595; 62 C. J. 658, 659; 52 Am. Jur. 216, § 4.

The fact that Leone and Roberts appeared together was of some significance in view of Bear's information that Roberts' inability to meet the $1,032.50 payment was occasioned by Leone's failure to meet an obligation due Roberts. (Roberts did not testify at the trial. However, at the time of the entry of judgment Leone requested that the case be reopened to receive Roberts' testimony, Roberts being then present in court. This request was denied.) Bear testified that when he told Roberts, Leone and Spinaio the amount "they began to berate me for my attitude." A refusal by Bear to accept the amount due, including costs and taxes, sufficient under the cases to stop the foreclosure sale, could cause Leone to think Bear desired the foreclosure of the trust property at all events to secure the farm and retain the $7,000 paid on its purchase price within less than a year and result in Leone's use of strong language. This conversation was followed without delay by the preparation and service of the notice of intention to redeem upon Bear and Sullivan.

It has been stated that foreclosure by a trustee's sale is a harsh method of disposing of the equity of redemption, and should be watched with jealous solicitude. Stoffel v. Schroeder, 62 Mo. 147, 149. See Miles v. Popp, Mo., 192 S. W. 424, 426[3].

From Bear's testimony that he informed Roberts and Leone he would require the payment of all the notes, we think he waived the tender of a less amount. We also think a preponderance of the evidence establishes an attempt to tender a sufficient amount to legally stop the foreclosure sale. The sale should not have occurred.

The decree is reversed and the cause is remanded with directions to the court to allow a reasonable time for the payment of the indebtedness actually in default under the provisions of the notes, interest and expenses in accord herewith; and set aside the sale and the trustee's deed upon compliance therewith; but if not complied with to dismiss the petition and quiet the title in defendants Bear. *Westhues* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.