Bruce L. MILLS, Appellant,

v.

1ST NATIONAL BANK OF MEXICO and Brad Brett, Respondents.

Louis NORDEN, et al.,

v.

Bruce L. MILLS, Appellant.

No. 45836.

Missouri Court of Appeals,
Eastern District,
Division Five.

Oct. 18, 1983.

Motion for Rehearing or Transfer Denied Dec. 20, 1983.

Application to Transfer Denied Jan. 17, 1984.

Joseph Delong, Jefferson City, for appellant.

Bradford A. Brett, Mexico, for respondents.

STEWART, Presiding Judge.

This appeal involves two separate suits that were consolidated and tried together at the trial court level. The first suit was brought by Bruce L. Mills (Mills) against First National Bank of Mexico (Bank), and Bradford Brett, trustee, to set aside a foreclosure sale of real estate owned by Mills and his former wife. A second count sought damages including damages for loss of farm profits by reason of deprivation of Mills' right to possession of the farm. The second suit was one brought by Louis Norden and Helen M. Norden (Nordens), who

purchased the Mills' property at the foreclosure sale, to recover rent and possession of the property pursuant to the terms of a rental agreement with Mills. The judgment in this court tried case upheld the foreclosure sale and found that the Nordens were entitled to possession of the premises and to rent at the rate of $150.00 per month from March 28, 1981.

We review the facts keeping in mind the principles that the credibility of witnesses and the weight to be given their testimony is for the trial court. *Central Missouri Foods, Inc. v. General Grocer Co.,* 538 S.W.2d 63, 64 (Mo.App.1976).

The property which is the subject matter of this appeal consists of a 49 acre farm located in Monroe County, Missouri, purchased by appellant in 1973 and improved in 1974 by the construction of a log house. To finance the home, appellant and his wife, Anna C. Mills, obtained a loan from respondent Bank in the approximate amount of $32,000, and executed a note with interest at the rate of 8% per annum providing for annual payments of $3,738.55, payable on December 20th of each subsequent year. The note was to run for 15 years. They also executed a deed of trust to secure the note.

The promissory note contained no forfeiture or acceleration clause and set forth no procedures for foreclosure and made no reference to a deed of trust. The deed of trust securing the $32,000 promissory note provided for acceleration of the note for default in the annual payment. The deed of trust also provided for forfeiture for failure to pay taxes on the property, or upon failure to pay expenses for insurance on the premises. Mills made his annual payments from 1975 through 1978. Bank permitted some of these payments to be made after the December 20th date pursuant to extension agreements executed by Mills and Bank.

In December 1979 Mills attempted to tender his annual payment, but Bank refused to accept it because appellant was $600 in arrears. On January 7, 1980, Mills signed a second promissory note to Bank which consolidated other loans he had with Bank and secured said note by a second deed of trust on his real estate. After several months of negotiations, Bank finally accepted Mills' December 1979 payment along with the $600 owed on October 11, 1980.

In October 1980, Mills and his wife began dissolution of marriage proceedings and Mrs. Mills vacated the premises. Mills' attorney in the dissolution proceeding advised appellant not to make his December 20, 1980, payment to Bank and Mills followed that advice.[1] On or about January 5 or January 9, 1981, Bank turned over both of appellant's notes to the trustee in the deed of trust to begin collection and foreclosure proceedings. An attorney associated with the trustee's law firm sent demand letters dated January 9, 1981, to Anna C. Mills and to Mills. The letter to Mills was sent by certified mail. It was returned by the post office unclaimed, after the post office had sent three notices of the presence of the letter to Mills. Mills learned of respondent's intention to initiate foreclosure proceedings on January 26, 1981, when Anna C. Mills informed him of the contents of the demand letter which she had received. The letter advised Mills and his wife that they were delinquent on both of their notes and that the property would be sold at a foreclosure sale unless the full unpaid principal and interest was paid.

On January 27, 1981, Mills presented his personal check in the sum of $3,738.55 to Mr. Gardner, an employee of Bank. Mr. Gardner informed Mills that the bank had incurred expenses in excess of $500 as a result of the collection proceedings; that real estate taxes were two years past due; that he was not tendering the proper amount of interest and for those reasons he would not accept the tender. At trial Mr. Gardner explained that he considered the amount of interest due to be approximately $200. This sum was the amount of interest on the unpaid principal of the loan. Mills'

---

1. That attorney is not representing Mr. Mills in this case.

insurance on the property had also lapsed, although the bank apparently was not aware of that at the time. No objection was made to the fact that tender was made in the form of a personal check. After Mills left Gardner he went to the trustee and made the same tender. The trustee informed Mills that he would not accept the tender if Bank would not accept the tender. The trustee did not tell him the exact amount that would be necessary to effect redemption before foreclosure.

In early February Mills tendered a cashier's check in the same amount as previously tendered. This tender was refused by Mr. Gardner and by the trustee.

The foreclosure sale was held on February 23, 1981. The Nordens purchased the property for the sum of $47,600.

The purchase price of the property was in excess of the amount appellant owed on the promissory notes, and the trustee divided the excess amount after taxes and expenses were paid between appellant and Anna C. Mills. Mrs. Mills signed a release of her right to sue to set aside the foreclosure sale and was not made a party to Mills' lawsuit. Mills' portion of the proceeds from the sale was in the form of a check made payable to Mills and his former attorney. Mills testified that he was willing to return the uncashed check to respondent Bank.

In upholding the foreclosure sale, the trial court issued findings of fact as to the controlling issues in the case. The court suggested that the promissory note should be read together with the acceleration clause contained in the deed of trust, but it indicated this finding was unnecessary to the question of whether the bank wrongfully refused the plaintiff's tender. It was found that the defendant would have accepted a tender of the total deficiencies even though it had a legal right to demand payment in full.

Mills contends that because the note did not contain an acceleration clause, Bank could not opt to accelerate the note on the basis of the acceleration clause in the deed of trust. Therefore Bank in demanding full payment of the note in order to stop the foreclosure waived tender. Alternatively Mills contends that if Bank would have accepted less than the full amount of the note it waived tender by demanding payment of an amount in excess of that necessary to preclude foreclosure.

Bank takes the firm position that "the acceleration clause in the deed of trust had been exercised prior to [Mills'] partial tender."

The general principles applicable to this case have recently been deftly reiterated. A deed of trust pledges land to secure a debt. The conditions of performance are according to the integral terms of the note and of the deed of trust. We look to the note for the description of the debt and repayment or the conditions of default. The deed of trust creates a lien to secure repayment in accordance with the terms of the note. The note is the basic contract; the deed of trust is collateral to the basic contract. *Tipton v. Holt,* 610 S.W.2d 659, 662 (Mo.App.1981).

In keeping with the concept that the note sets the terms for repayment of the loan, it has been held that where a deed of trust contains an acceleration clause making the whole indebtedness due upon the failure to pay an installment of a note, but the note does not provide for acceleration upon default of a payment, the provisions of the note as to payment control. *Leone v. Bear,* 241 S.W.2d 1008, 1013 (Mo.1951). The rationale being that "the deed of trust is collateral to the debt affecting only the security, and the payment of what is due does not endanger or lessen the security." *Id.* at 1014.

We feel that the terms of the note control for yet another reason. The deed of trust is required to set out the terms of the obligation that it secures. In this case the printed form adds the acceleration clause to the note. In doing so it does not truly set out the terms of the note. Because it misstates the terms of the note, we ignore the extraneous terms of the deed of trust.

In this case the note did not provide for acceleration for failure to make timely payment of installments. When the note was turned over for payment the attorney for Bank wrote Mills and his wife. The letter made the demand that they "immediately pay, in full, the unpaid principal and accrued interest [on the note] . . . and eliminate the costs and expense of foreclosure sale. . ." The notice of sale dated January 23, 1981, also purported to accelerate the indebtedness.

As stated above the position of Bank and the trustee is that the acceleration clause had been exercised prior to tender by Mills [2] and that the only way that Mills could avoid foreclosure would be to tender the balance due on the principal amount of the note, the interest to date of tender, cost of foreclosure, and back taxes.

It is apparent that any amount less than the sum demanded by the letter of the attorney and provided in the notice of sale would have been futile. It has been held that where the amount demanded is excessive and the tender of a lesser amount than the demand would be unavailing that it is unnecessary to go through the ceremony of tender. *Leone*, 241 S.W.2d at 1014.

Under the facts in this case the Bank was not empowered to accelerate the note. A tender of the sums actually due so as to preclude the foreclosure would have been of no avail, therefore such a tender was waived by the Bank.

Bank contends that the case of *Wilson v. Reed*, 270 Mo. 400, 193 S.W. 819 (1917) is controlling in this case. The action was in ejectment. Judgment was for the holder of the note and deed of trust for possession for the purpose of applying rents and profits to payment of the note and upon payment, possession to be returned to the debtor. Defendant had executed a note due in 5 years and deed of trust at the same time. The note did not contain an acceleration clause. It provided for annual interest which if not paid was to be added to the principal. In that case the abstract of the record did not show a motion for new trial or that a bill of exception had been filed. The case was considered only on the record proper.

On the record proper the judgment recited that there had been "[a] forfeiture and that the conditions of the deed of trust had been broken. . ." The conditions in the deed of trust do not appear in the opinion. The court there recognizes the principle stated above that the note and deed of trust must be construed together so as to give effect to both where possible to do so. It then states the controlling principle that "[a] mortgage or deed of trust may be foreclosed before maturity of the note if it has provisions or conditions upon which a forfeiture will take place independent of the terms of the note. (citations omitted)" *Wilson*, 193 S.W. at 820. The court gave as example those deeds of trust that provide that the mortgagor shall pay taxes against the property as they mature or keep the property insured or prevent waste. The court then held that the trial court's finding that there had been a breach of conditions is "conclusive that these were conditions in the deed of trust which had been broken, and would authorize a judgment for possession, although neither the note nor interest could be collected by personal suit." *Wilson*, 193 S.W. at 821.

The conditions concerning taxes, insurance and the prevention of waste are intended for the protection of the security. The failure to comply with such conditions could result in the loss or diminution of the security and the breach of such condition would if not corrected warrant foreclosure.

For the reasons set out above we believe that *Wilson v. Reed* is distinguishable from *Leone v. Bear* and that the later case is controlling here.

The trial court in its findings stated that its finding that the note had been properly accelerated was unnecessary to the question of whether Bank had wrongfully refused Mills' tender because Bank would have ac-

---

**2.** Their brief states, "The deed of trust contained an acceleration provision which was clearly exercised prior to Appellant's partial tender."

cepted the full amount of the total deficiencies even though it had a legal right to demand payment in full.

There may be some question as to whether Bank would have accepted less than the full amount of the note, interest and cost in view of the position of Bank in its brief. In our discussion we will consider Mr. Gardner's statement to Mr. Mills as a waiver of the purported acceleration of the note and as the demand for the amount that Bank claimed was necessary to avoid foreclosure.

When Mills tendered the sum of $3,738.55, Mr. Gardner told Mills that Bank had incurred expenses in excess of $500 as a result of collection proceedings; real estate taxes were two years in arrears and that Mills did not have the proper amount of interest. At the trial Mr. Gardner explained that the amount of interest due was 8% on the unpaid principal from December 20 to January 27, in the sum of about $200. The demand can be said to be the payment due on December 20, $500 in costs, $200 interest, and the delinquent taxes for two years.

■ We consider first the demand of $500 as cost of collection. The trustee is entitled to a fee determined by § 443.360 which does not accrue until after sale and is not necessary to a tender. *Tipton v. Holt,* 610 S.W.2d 659, 622 (Mo.App.1981).

■ The note and deed of trust was referred to the trustee who was an attorney, he in turn referred the matter to an attorney in his office who wrote a letter accelerating the note and demanding payment. She also obtained a letter from the title company with respect to the status of the title to the property at a cost of $30. The attorney reviewed the note, deed of trust and the record of payments. She then checked the records at the Monroe County Courthouse and prepared the notice of sale. The fees were paid to the law firm. The only basis upon which the $500 charge could be made was the work of the attorney and the cost of the letter obtained from the title company. The note did not impose the obligation of attorney's fees on the maker

for collection of the debt. The costs attributed to the work of the attorney was not a proper condition of tender for redemption nor was the charge for the title company required to be included in a tender. *See Tipton v. Holt,* 610 S.W.2d 659, 662 (Mo. App.1981). We need not lengthen this opinion by a discussion of the amount of interest due. On that point see *Capital City Motors, Inc. v. Thomas W. Garland, Inc.,* 363 S.W.2d 575, 579 (Mo.1962).

There is no doubt that the tender of any amount less than the demand made by Mr. Gardner would not have been acceptable. Such is the position of Bank on appeal. Under such circumstances, it is unnecessary to tender a lesser amount in this case. *Leone,* 241 S.W.2d at 1015.

Mills also alleges error in the refusal of the trial court to allow him damages. Should this become an issue on remand we refer the parties to the cases of *Sullivan v. Winer,* 307 S.W.2d 704 (Mo.App.1957), *McCrory v. Monroe,* 336 S.W.2d 118 (Mo. App.1960) and *Blackburn v. Carlson Seed Co.,* 321 S.W.2d 520 (Mo.App.1959).

The judgment of the trial court is reversed as to the case of Mills against Bank and this cause is remanded to the trial court with directions to enter an order allowing Mills a reasonable time, not less than ninety days, to redeem the property upon payment of all installments of principal and interest due to date of redemption with interest of 8% on each installment from the date each such installment was to be paid; make reimbursement of all taxes and insurance premiums that have been paid on the property and arrange to insure the property after the date of redemption.

Upon compliance with this order of the trial court by Mills, the sale and trustee's deed shall be declared null and void and judgment entered accordingly. If the said order is not complied with the trial court shall reinstate the judgment from which Mills has appealed.

It necessarily follows that the case of *Norden v. Mills* must also be reversed and remanded. In the event Mills complies with the conditions set out above the trial

court shall enter judgment in favor of Mills and against Nordens. In the event that Mills fails to comply with the conditions set out above the judgment in favor of Nordens against Mills shall be reinstated.

The court is empowered to undertake other proceedings not inconsistent with this opinion.

DOWD and CRIST, JJ., concur.

## ON MOTION FOR REHEARING

PER CURIAM.

In a motion for rehearing First National Bank of Mexico and the trustee ask us to make an order respecting the monies paid to Mr. and Mrs. Mills. Mrs. Mills is not a party to this litigation and no order could be made as to her personally. Any issues as between Mills and the defendants may be determined after the circuit court takes jurisdiction of the cause upon the issuance of our mandate.

The motion for rehearing or in the alternative to transfer is denied.