**Karen B. (Jones) KING,
Respondent/Appellant,**

v.

**F.T.J., INC., Appellant/Respondent.**

**No. WD 40624.**

Missouri Court of Appeals,
Western District.

Dec. 27, 1988.

Motion for Rehearing and/or
Transfer to Supreme Court Denied
Jan. 31, 1989.

Application to Transfer Denied
March 14, 1989.

Ronald C. Spradley, Sue A. Sperry, Kansas City, for respondent/appellant.

William H. Sanders, Sally R. Burger, Thomas M. Bradshaw, Kathleen A. Clark, Kansas City, for appellant/respondent.

Before FENNER, P.J., and
MANFORD and GAITAN, JJ.

FENNER, Judge.

This case arises as a result of the merger of Forrest T. Jones and Company, Inc. (Forrest T. Jones and Company) into F.T.J. Inc. (FTJ), on July 14, 1987, with FTJ as the surviving corporation. Forrest T. Jones and Company was a Subchapter S Corporation which specialized in providing insurance for professional associations of doctors, lawyers, nurses, teachers and accountants.

Karen B. (Jones) King was married to the late Robert Jones who was the son of Forrest T. Jones. After the death of Robert Jones, Karen married William King. Karen King was a minority shareholder in Forrest T. Jones and Company individually and in her capacity as custodian on behalf of her three minor children, Alyse M. Jones, Margaret G. Jones and Jennifer K. Jones. Karen King, individually owned 20,-000 shares of common stock and as custodian for her children she held an additional 960 shares of common stock. (All stock owned by Karen King individually and as custodian on behalf of her children will hereinafter be referred to as Karen King's stock). Forrest T. Jones and Company had a total of 200,000 outstanding shares of stock all of which had always been owned by members of the Forrest T. Jones family.

Pursuant to the terms of the merger, all shareholders owning less than 22,000 shares were to receive cash in lieu of stock. Karen King objected to the merger of Forrest T. Jones and Company into FTJ in her individual capacity and as custodian on behalf of her children.

In accordance with § 351.455[1], shareholders objecting to a merger are entitled to be paid "fair value" for their stock, assuming that they meet the requirements otherwise set forth in the statute. Karen King complied with all statutory requirements and proceeded to have the court determine the fair value of her stock. After trial in the Circuit Court of Jackson County, the Honorable William F. Mauer entered judgment determining that the fair value of Karen King's stock was $75.90 per share. Both Karen King and FTJ appeal the judgment of the trial court.

In arriving at its decision, the court had before it lengthy testimony from four expert witnesses. John Meara and Elvis Thomas testified as expert witnesses on behalf of Karen King. John Meara opined that Mrs. King's stock in Forrest T. Jones and Company had a fair value of $99.23 per share. Elvis Thomas established the fair value at $101.00 per share. Steven Walter and Richard Morrison testified as expert witnesses on behalf of FTJ. Steven Walter testified that Karen King's stock had a fair value of $34.35 per share. Richard Morrison testified that the fair value was $41.08 per share.

At the conclusion of six days of testimony, the trial court took the case under

1. All statutory references are to RSMo 1986.

advisement and subsequently entered its judgment supported by findings of fact and conclusions of law as requested by the parties.

The court found that because Forrest T. Jones and Company was a closely held family corporation it was not necessarily operated in accordance with management principles utilized by most publicly held corporations. Based upon the evidence heard, the trial court concluded that two basic valuations were required to establish the value of Forrest T. Jones and Company. The evidence supported the trial court's determination that the business of Forrest T. Jones and Company consisted of the active operation of an insurance agency and the investing of assets held in a fashion similar to a mutual fund.

In establishing a value of the insurance agency business by itself, the court adopted a portion of the methodology propounded by FTJ's expert witness, Richard Morrison. The trial court determined that the appropriate methodology to establish the value of the insurance agency business by itself was "The Multiple of Commissions Income and Class of Business and/or Product Methodology." The court characterized this as an approach that focused on the revenue generated by the insurance agency business and by considering this methodology the court established the value of the insurance agency business at $7,539,971.00.

The trial court next determined that the assets held by Forrest T. Jones and Company surplus to the ongoing operation of the insurance agency business had a value of $8,783,429.00. The court then combined the value of the ongoing insurance agency business ($7,539.971.00) and the value of the assets surplus to that business ($8,738,-429.00) for a total value of Forrest T. Jones and Company ($16,323,400.00). The court then divided the total value ($16,323,400.00) by the total number of shares (200,000) to arrive at a value of $81.61 per share. Next, the court applied a minority discount of 7% to arrive at a "fair value" of $75.90 per share for the stock held by Karen King.

The leading case of the Missouri Supreme Court in regard to determining "fair value" under § 351.455 when minority shareholders object to a corporate merger is *Phelps v. Watson–Stillman Company*, 365 Mo. 1124, 293 S.W.2d 429, 433 (1956), where it was held that in the various statutes the terms "value", "fair value", "fair cash value", and "fair market value" have the same general meaning and purposefully if not wisely establish a flexible general standard for fixing value. The *Phelps* decision also holds that there is no simple mathematical formula to establish fair value and each case presents its particular problem, but in general some of the factors to be considered and weighed are asset value, earnings, dividends, management and every relevant fact and circumstance which enters into the value of the corporate property and reflects itself in the worth of corporate stock. *Id.*

The case of *Dreiseszun v. FLM Industries, Inc.*, 577 S.W.2d 902, 907 (Mo.App. 1979), is also relevant to a determination of fair value. Although the court in *Dreiseszun* was confronted with a determination of fair value under § 351.405 relating to the right of a dissenting shareholder in the event of a sale or exchange of all or substantially all of a corporation's assets, the court in *Dreiseszun* does extend the effect of its decision to all other statutes employing the term fair value. Therefore, the opinion in *Dreiseszun* is applicable to define fair value as used in § 351.455 relating to a merger. The court in *Dreiseszun* recognized that there is no simple precise mathematical formula for determining the fair value of corporate stock under § 351.405 or other statutes employing this term. The court in *Dreiseszun* held that each case presents different elements of value and each case must be viewed separately.

In *Kirtz v. Advanced Instruments, Inc.*, 581 S.W.2d 868, 870 (Mo.App.1979), the court held that the standard for review of a trial court decision establishing "fair value" of stock held by minority shareholders objecting to a merger is as established in *Murphy v. Carron*, 536 S.W.2d 30 (Mo.

banc 1976). Therefore, in determining fair value pursuant to § 351.455, the decision of the trial court will be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.*

The difficulty of establishing value for the stock of a closely held corporation has been recognized by the Missouri Supreme Court and therefore, in determining value, deference is to be given to the trial court's coign of vantage to judge the credibility of witnesses. *Hoffmann v. Hoffmann,* 676 S.W.2d 817, 826 (Mo. banc 1984) (citations omitted). Furthermore, the weight to be given opinion evidence is for the trier of fact and the court can accept the testimony of one expert and reject the testimony of another. *Id.*

## I. Marketability Discount

■ In its first point on appeal FTJ argues that the trial court erred in awarding Karen King $75.90 per share for her stock in Forrest T. Jones and Company. FTJ argues that $75.90 exceeded fair value in that the trial court should have discounted the value of each share to reflect its lack of marketability.

This point centers on the meaning of "fair value" as used in § 351.455. This section of the statutes provides that a shareholder who objects to a merger and complies with the technical requirements of the statute can obtain a judgment from a court of competent jurisdiction determining the fair value of said shareholder's stock. Fair value is to be determined as of the day prior to the date on which the vote approving the merger was taken. The court determined the fair value of Karen King's stock to be $75.90 per share as of July 9, 1987, and judgment was entered against the surviving corporation pursuant to § 351.455.

The expert witnesses testifying on behalf of FTJ, Morrison and Walter, both discounted the value of Karen King's stock to account for lack of marketability. The experts testifying on behalf of Karen King, Meara and Thomas, were of the opinion that Karen King's stock should not be discounted to account for lack of marketability.

Morrison and Walter were of the opinion that a marketability discount was appropriate to take into account that Forrest T. Jones and Company was a closely held family corporation with no shareholder agreement to pay dividends to cover the individual tax liabilities attributable to its Subchapter S status [2] and further considering that the stock was subject to a restrictive agreement that gave the company a right of first refusal before stock could be sold. FTJ argues that these factors make the stock less valuable because they limit prospective purchasers. Any purchaser of the stock would take the position of a minority shareholder without power to alter the structure of the corporation and FTJ argues these considerations require a marketability discount.

Thomas and Meara opined that lack of marketability was not a factor in establishing fair value for Karen King's stock under the circumstances of this case. Meara testified that he considered the following circumstances in determining that a discount should not be applied for lack of marketability: Forrest T. Jones and Company was being merged with FTJ and all shareholders with less than 22,000 shares were required to accept a cash payment from FTJ in exchange for their stock; the company had a strong future; and the company had just invested tremendous amounts in computers and advertising as well as in developing its products.

FTJ argues that *Kirtz v. Advanced Instruments, Inc., supra,* requires that the court apply a marketability discount when determining fair value under § 351.455. Although the court in *Kirtz* speaks in terms of establishing fair market value pursuant to § 351.455 it does not require the application of a marketability discount.

**2.** As a Subchapter S Corporation all income passed directly through the company to the shareholders who were required to report the company's income on their individual tax return.

In the various statutes the terms "value", "fair value", "fair cash value" and "fair market value" have the same general meaning and purposefully if not wisely establish a flexible general standard for fixing value. *Phelps v. Watson–Stillman Company, supra* 293 S.W.2d at 433. Fair value as used in § 351.455 sets a flexible general standard for fixing value with no simple precise mathematical formula for determining fair value but requires that the court consider every relevant fact and circumstance that enters into the value of the corporate property and reflects itself in the worth of corporate stock. *Id., Dreiseszun v. FLM Industries, Inc., supra.*

Under the standard for review as set forth in *Murphy v. Carron, supra,* and under the relevant facts and circumstances in the case at bar, it cannot be said that the trial judge erred by failing to apply a lack of marketability discount to Karen King's stock. The testimony of experts Thomas and Meara supported the judgment of the trial court in not applying a marketability discount. The trial court can accept the testimony of one expert and reject the testimony of another. *Hoffmann v. Hoffmann, supra.*

Under Missouri law, the application of a marketability discount in determining fair value pursuant to § 351.455, when a shareholder of a corporation objects to a merger or consolidation, rests within the sound discretion of the trier of fact after every relevant fact and circumstance is considered.

## II. Minority Discount

■ In its second point on appeal FTJ argues that the trial court erred in awarding Karen King $75.90 per share for her stock in Forrest T. Jones and Company. In this point FTJ argues that $75.90 exceeded fair value in that the trial court applied a minority discount only to the non-saleable assets of the company rather than to the value of each minority share of stock. In her first point on appeal Karen King also argues that the trial court erred by applying a minority discount to the value of her shares. Karen King argues that the fact her shares represented a minority interest is not relevant to a determination of fair value under § 351.455.

Generally speaking, a minority discount reflects that the seller of a minority stock interest has no controlling voice in corporate affairs. Therefore, the minority nature of the interest may be said to diminish the worth of the stock itself.

Once again the expert witnesses offered differing opinions as to the appropriateness of applying a minority discount to the value of Karen King's stock. Meara, Thomas and Walter did not believe it proper to reduce the value of Karen King's stock to account for its minority status while Morrison testified that a minority discount should be applied to determine fair value. Morrison applied a 15% minority discount to the total value of Karen King's minority interest in calculating the fair value of her stock.

The trial court applied a minority discount of 7% in calculating the fair value of Karen King's stock. The court concluded that since 53% of the assets of Forrest T. Jones and Company were saleable assets that were not necessary in the operation of the business, the 15% minority discount applied by Morrison should not be applied to the whole business, but only to that portion of the business not represented by saleable assets. By applying a 15% minority discount to the 47% of the business not represented by saleable assets (15% × 47%) the court arrived at 7% as an appropriate minority discount to be applied to the value of Karen King's stock.

The application of a 7% minority discount was supported by the evidence presented to the court. Expert witness John Meara testified that Forrest T. Jones and Company was actually like two companies within one shell. Meara testified that the company was an active operation of an insurance agency and also a personal holding company. Meara stated that the company was holding tremendous amounts of assets and investing those assets much like a mutual fund. Expert witness Richard Morrison also testified that the company had considerable assets surplus to its needs. Morri-

son's calculations reflected that the company's surplus net worth accounted for approximately 55% of the company's value. The trial court's calculations established the saleable assets or surplus net worth at 53% of the company's value.

The 7% minority discount applied by the trial court was appropriate under the circumstances of the case at bar given the high percentage of saleable assets determined by the court not to be necessary in the operation of the business. The judgment of the trial court reflects the fact that in the case at bar, Karen King's status as a minority shareholder diminished the value of her stock to the extent that the stock represented her interest in the active operation of the insurance agency and her lack of a controlling voice in that aspect of the company's business, but not to the extent that her stock represented an interest in the saleable assets held by the company that were not necessary in the operation of the insurance agency business.

Once again, fair value as used in § 351.455, requires that the court consider every relevant fact and circumstance. *Phelps v. Watson–Stillman Company, supra; Dreiseszun v. FLM Industries, Inc., supra.* When there is conflicting testimony the trial court can accept or reject all, part or none of a witness's testimony. *MacCurrach v. Anderson,* 678 S.W.2d 459, 463 (Mo.App.1984).

As stated previously with regard to the application of a marketability discount, under Missouri law, the application of a minority discount in determining fair value pursuant to § 351.455 when a shareholder of a corporation objects to a merger or consolidation rests within the sound discretion of the trier of fact after every relevant fact and circumstance is considered.

The trial court did not err, under the facts and circumstances of the case at bar, by applying a minority discount or by applying the minority discount only to the non-saleable assets of the company that were integral to operation of the insurance agency business.

### III.   Alleged Pressure By Minority Shareholder

■ FTJ's third point on appeal is a combination of its first two points by once again arguing that the trial court erred by refusing to properly discount and value Karen King's stock with the additional argument that Karen King inappropriately pressured Forrest T. Jones and Company into effecting a merger and purchasing her stock. The questions of discount and value are covered under I and II herein and will not be further addressed in this point.

In support of its argument that Karen King inappropriately pressured Forrest T. Jones and company into effecting a merger and purchasing its stock, FTJ refers to the fact that Karen King initially asked the Jones family and Forrest T. Jones and Company to purchase her stock for $78.30 per share. When the $78.30 was not accepted by the company, Karen King advised the Jones family in March of 1987 that if her stock was not purchased she would attempt to register this family-owned subchapter S corporation with the SEC as a publicly held company. Karen King did acknowledge in her communication to the Jones family that the company could not be registered with the SEC without the signatures of the executive officers and directors of Forrest T. Jones and Company.

Subsequent to the March, 1987 letter in regard to registration with the SEC, Karen King wrote the Jones family and Forrest T. Jones and Company advising them that she had received a bona fide offer to sell 500 shares of her stock for $78.30 per share. It turned out that the perspective purchaser was the sister of Karen King's husband.

In the event that Karen King had received a bona fide offer to purchase 500 shares of her stock the restrictive stock agreement would have required Forrest T. Jones and Company to buy the stock at that price or allow her to sell to the other purchaser. However, since the prospective purchaser was the sister of Karen King's husband, the offer was deemed not to be "bona fide" and nothing further came of Karen King's letter of April 1, 1987.

FTJ argues Karen King's letters of March and April, 1987, were evidence of Karen King's efforts to pressure the company into paying her in excess of fair value for her stock. The trial court heard and weighed the evidence presented and did not consider this evidence as relevant to its determination of fair value pursuant to § 351.455.

The weight to be given a witness's testimony is for the trial court. *Mills v. 1st National Bank of Mexico,* 661 S.W.2d 808, 810 (Mo.App.1983). Evidence is relevant if it tends to prove or disprove a fact in issue or corroborates evidence that is relevant and bears on the principal issue. *Lawson v. Schumacher & Blum Chevrolet, Inc.,* 687 S.W.2d 947, 951 (Mo.App.1985). Questions of relevancy are committed to the broad discretion of the trial court. *Missouri Commercial Inv. Co. v. Employers Mut. Cas. Co.,* 680 S.W.2d 397, 402 (Mo. App.1984).

FTJ's third point on appeal is denied.

### IV. Methodology of FTJ Expert

■ In its fourth and final point on appeal FTJ argues that the trial court erred in finding that the fair value of Karen King's stock was $75.90 per share because that finding was not supported by the evidence in that the court adopted the methodology of FTJ's expert, Richard Morrison, and yet made erroneous wholesale alterations and omissions to Morrison's methodology.

The trial court did not adopt the methodology of FTJ's expert Richard Morrison in total. The court adopted portions of the opinions expressed by Richard Morrison and portions of the opinions of the other experts who testified at trial.

The standard of review in a court-tried case requires this court to affirm the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron, supra.* Where there is a conflict in the evidence the trial court has the prerogative to determine the credibility of the witnesses, ac-

cepting or rejecting all, part or none of the testimony. The trial court herein acted properly in adopting certain portions of the opinions of the various experts who testified at trial and was not required to accept the methodology of any expert in total. The judgment is to be affirmed under any reasonable theory supported by the evidence. Further, this court must accept as true the evidence and permissible inferences therefrom favorable to the prevailing party and disregard the contradictory evidence. Deference is accorded the trial judge even if there is evidence that might support a different conclusion. *MacCurrach v. Anderson, supra* at 463.

FTJ's fourth point on appeal is denied.

### V. Attorney's Fees

■ In Karen King's second and final point on appeal she argues that the trial court erred in overruling her motion to tax costs including her attorney's fees against FTJ. Karen King claims that she is entitled to recover as costs her attorney's fees because the majority shareholders initiated and accomplished the merger and further that the unreasonably low price of $35.00 per share she was offered for her shares, prior to the court proceeding, constituted unusual circumstances necessitating an award of attorney's fees to equitably balance the benefits.

The rule in Missouri is that absent statutory authorization or contractual agreement, each litigant, with few exceptions, must bear the expense of his own attorney's fees. *Mayor, Councilmen, and Citizens, Etc. v. Beard,* 636 S.W.2d 330, 331 (Mo. banc 1982). Two exceptions to the general rule of litigants bearing the expense of their own attorney's fees, which Karen King argues to be applicable here, are when a court of equity finds it necessary to award attorney's fees in order to balance benefits and when attorney's fees are incurred because of involvement in collateral litigation. *Cimasi v. City of Fenton,* 659 S.W.2d 532, 537 (Mo.App.1983). Karen King argues that she is entitled to an award of attorney's fees in order to balance the benefits. The equitable bal-

ancing of benefits by an award of attorney's fees is appropriate only if "very unusual circumstances" can be shown. *Id.*

When a court has authority to award attorney's fees the decision, whether or not to award fees and if so, the amount thereof, is within the broad discretion of the court and will not be reversed on appeal unless there is a manifest abuse of discretion. *See, Geary v. Geary,* 697 S.W.2d 318, 320 (Mo.App.1985); *Mills v. Mills,* 663 S.W.2d 369, 374 (Mo.App.1983); *Kenny's Tile & Floor Covering, Inc. v. Curry,* 681 S.W.2d 461, 466 (Mo.App.1984). The trial court did not find the requisite "very unusual circumstances" and the record does not reflect that this determination by the trial court was a manifest abuse of discretion.

The judgment of the trial court is affirmed in all respects.

All concur.