**OAK BLUFF PARTNERS, INC.,**
Respondent/Cross–
Appellant,

v.

**Robert E. MEYER, Appellant/Cross–
Respondent.**

No. 81468.

Supreme Court of Missouri,
En Banc.

Oct. 26, 1999.

Richard A. Wunderlich, Jeana D. McFerron, Robert Hoemeke, St. Louis, for Appellant/Cross-Respondent.

Barry S. Ginsburg, Clayton, for Respondent/Cross-Appellant.

## PER CURIAM.[1]

Oak Bluff Partners, Inc., and Robert E. Meyer each appeal a judgment entered after a jury trial in the Circuit Court of St. Louis County. This appeal involves the question of whether Meyer is liable in money damages for his alleged denial of Oak Bluff's right to redeem under section 443.400 [2] as a result of Meyer's refusal to accept a tender of payment that did not include attorneys' fees. The judgment is affirmed in part and reversed in part.

### Background

On July 21, 1995, Oak Bluff, C.E. "Bud" Simmons, Jr., and Meyer entered into a settlement agreement compromising numerous claims and lawsuits between Meyer and Simmons relating to the Oak Bluff condominium project and their relationship as shareholders of Oak Bluff. These dis-

---

1. The appeal in this case was originally decided by the Court of Appeals, Eastern District, in an opinion written by the Honorable Richard B. Teitelman. Following transfer to this Court, the court of appeals opinion, as modified, is adopted as the opinion of this Court.

2. All statutory citations are to RSMo 1994.

putes principally arose out of Oak Bluff's business of building and selling condominiums at the Lake of the Ozarks.

By the settlement, Meyer transferred to Oak Bluff his ownership interest in Oak Bluff. In exchange, Oak Bluff delivered a cashier's check made payable to Meyer for $155,000 at closing. Oak Bluff and/or Simmons also agreed to pay Meyer an additional $100,000 either: (a) at such time as the sale of a total of five condominium units in Building # 6 at Oak Bluff was closed, or (b) on August 1, 1996, whichever occurred first. The settlement agreement required a deed of trust to secure the obligation to pay Meyer $100,000. Paragraph 4 of the deed of trust secured the obligation.

As also required by the settlement agreement, Meyer and Oak Bluff entered into a consulting agreement dated July 28, 1995. The consulting agreement provided that at the closing of the sale of each condominium unit, beginning with the eleventh condominium unit sold, Meyer would receive a $5,000 consulting fee and that these consulting fee payments would continue until a total of $200,000 had been paid to Meyer. The consulting agreement also required a deed of trust to secure Oak Bluff's payment obligations to Meyer under the consulting agreement. Paragraph 4 of the deed of trust also secured this obligation.

The deed of trust provided that if Oak Bluff defaulted on its obligations to pay Meyer under the settlement agreement or consulting agreement, Meyer could accelerate the payments due under such agreements and/or foreclose on the property secured by the deed of trust. The deed of trust also required payment of all amounts due under the settlement agreement, consulting agreement, and the deed of trust, including the costs of enforcement.

On July 21, 1996, Meyer sent a letter to Simmons and Oak Bluff reminding them that they were jointly obligated to pay Meyer $100,000 on August 1, 1996, and requesting that the payment be made to him at his office in Chesterfield, Missouri, on that date. On August 1, 1996, Meyer received a facsimile letter from Barry A. Ginsburg, the attorney for Oak Bluff and Simmons. The letter advised Meyer that there were potential problems with a building that had been completed with Meyer's involvement. By the agreement between Meyer and Oak Bluff, Meyer had an obligation to indemnify Oak Bluff if such a problem occurred. The letter further advised that Oak Bluff could possibly raise a claim for indemnification against Meyer and, if this occurred, Oak Bluff could be required to escrow any monies due to Meyer to secure payment of such potential liabilities.

In response to this letter, on the afternoon of August 1, 1996, Henry F. Luepke, Jr., Meyer's attorney and trustee under the deed of trust, faxed a letter to Oak Bluff and Ginsburg, advising them that Simmons and Oak Bluff were in default of their payment obligations under the settlement agreement. The letter also advised that, by the deed of trust, Meyer was accelerating all obligations of Simmons and Oak Bluff under the settlement agreement and demanding the $100,000 payment due plus interest and costs of collection. This letter also advised Simmons and Oak Bluff that, by the deed of trust, Meyer was accelerating all obligations of Simmons and Oak Bluff under the consulting agreement and demanding the $200,000 due plus interest and costs of collection.

On August 3, 1996, an envelope arrived at Meyer's legal residence in Jefferson City, Missouri, containing a facsimile copy of a photocopy of a check drawn on Oak Bluff's account and made payable to Meyer in the amount of $100,000. The check was marked paid "under protest." The envelope was postmarked August 1, 1996, Rock Island County, Illinois.

On August 9, 1996, Luepke sent a letter to Ginsburg, via messenger, returning the check and advising that unless the $300,-000 accelerated payment was received by

Meyer, he would foreclose on Oak Bluff Condominiums as permitted by the deed of trust. On August 12, 1996, Luepke received in the mail an original check drawn on Oak Bluff's account and payable to Meyer for $100,000. Meyer refused to accept the payment and returned it to Oak Bluff.

On August 23, 1996, Oak Bluff filed a petition for declaratory judgment and injunction against Meyer. Oak Bluff sought to prevent Meyer from advertising Oak Bluff Condominiums for sale or from taking any steps to foreclose. On August 26, 1996, Oak Bluff's motion for temporary restraining order was heard and overruled. On September 4, 1996, a hearing was held on Oak Bluff's request for a preliminary injunction, which was denied on the same day.

In early September 1996, Simmons advised Luepke that Oak Bluff wanted to redeem the property pursuant to Missouri law. In response, Luepke advised Simmons that Oak Bluff must pay attorneys' fees owed to Lewis, Rice & Fingersh, L.C., in order to redeem the property. About September 11, 1996, Oak Bluff tried to close on an Oak Bluff unit. To clear the title on the unit and allow the closing, Oak Bluff delivered two cashier's checks to the title company totaling $237,217.99 in satisfaction of the deed of trust executed by Oak Bluff. One of the cashier's checks was in the amount of $20,002.50 and made payable to Lewis, Rice. Meyer then executed a full deed of release acknowledging satisfaction of the deed of trust executed by Oak Bluff and releasing the lien on Oak Bluff Condominiums. On September 13, 1996, the full deed of release was recorded.

On October 1, 1996, Oak Bluff amended its petition seeking to recover against Meyer for breach of contract (Count I), conspiracy (Count II), and punitive damages (Count III). In Count I, Oak Bluff claimed that the declaration of default by Meyer on August 1, 1996, constituted a breach of contract because the default was declared before the end of that day, when the payment was not delinquent. In Count II, Oak Bluff claimed that on September 10, 1996, it tendered the amount necessary to redeem the property, but Meyer conspired with others to refuse the tender and, thus, deny Oak Bluff its right to redeem under section 443.400. In Count III, Oak Bluff claimed that Meyer's actions warranted punitive damages.

After trial, the jury returned a verdict for Meyer on Count I (breach of contract). On Count II (conspiracy), the jury returned a verdict for Oak Bluff, awarding $75,000 in damages. On Count III, the jury found for Meyer on Oak Bluff's claim for punitive damages. Oak Bluff filed a motion for judgment notwithstanding the verdict on Count I. The trial court overruled the motion. ·

Both Meyer and Oak Bluff appeal. Meyer argues that the trial court erred in entering judgment for Oak Bluff on Count II because: (1) Instruction No. 7 incorrectly stated the law and erroneously instructed the jury to award money damages against Meyer for denying Oak Bluff its right to redeem under section 443.440 when Meyer refused the tender of payment from Oak Bluff; (2) Oak Bluff failed to pursue its statutory remedy under section 443.130; and (3) as a matter of law, a claim for conspiracy does not lie.

Oak Bluff cross-appeals, arguing that the trial court erred in not granting a directed verdict at the close of the evidence and not entering judgment notwithstanding the verdict on Count I, because Meyer admitted he breached his contractual obligations by declaring a default and accelerating Oak Bluff's obligations before the payment from Oak Bluff was due.

Neither party appeals the judgment entered on Count III.

### Meyer's Appeal

 Meyer argues correctly that the trial court erred in entering judgment in favor of Oak Bluff on Count II for civil conspiracy. A "civil conspiracy" is an

agreement or understanding between persons to do an unlawful act, or to use unlawful means to do a lawful act. *Gibson v. Brewer*, 952 S.W.2d 239, 245 (Mo.1997). In Missouri, if tortious acts alleged as elements of a civil conspiracy claim fail to state a cause of action, then the conspiracy claim fails as well. *Rice v. Hodapp*, 919 S.W.2d 240, 245 (Mo. banc 1996). The conspirators must have "a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement." *Chmieleski v. City Products Corp.*, 660 S.W.2d 275, 290 (Mo.App.1983). A claim of conspiracy must establish: (1) two or more persons; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and, (5) the plaintiff was thereby damaged. *Rice v. Hodapp*, 919 S.W.2d 240, 245 (Mo. banc 1996).

In this case, Oak Bluff alleged that Meyer and Luepke acted together and agreed to deny Oak Bluff's right to redeem unless Oak Bluff paid Meyer's attorneys' fees to Lewis, Rice. Oak Bluff further alleged that Oak Bluff's tender of payment to redeem – not including attorneys' fees—was refused and that Meyer continued to threaten foreclosure. Oak Bluff also alleged damages. However, Oak Bluff has not proved, nor can Oak Bluff prove, that Meyer committed an unlawful act by refusing to allow Oak Bluff to redeem without paying Meyer's attorneys' fees.

Under the deed of trust, Oak Bluff conveyed real property in trust as security for an obligation to Meyer. By the terms of the deed of trust, Meyer would release the lien on Oak Bluff's property when Oak Bluff fully satisfied the obligation to Meyer. However, if Oak Bluff defaulted on its obligation, at Meyer's discretion the trustee could foreclose on the property and sell it absolutely, using the proceeds to satisfy Oak Bluff's obligation and to pay the costs of the foreclosure.

Under section 443.400, once Oak Bluff defaulted and the trustee began to foreclose, Oak Bluff could stop the foreclosure proceedings by paying Meyer the full obligation. *Section 443.400.* When Meyer received full satisfaction, he was required to release the lien and clear Oak Bluff's title to the property. *Section 443.060.* However, Meyer's duty to provide the deed of release did not arise until Oak Bluff had paid "full satisfaction" to Meyer.

■ The threshold issue, then, is whether the payment of "full satisfaction" includes payment of attorneys' fees. The conditions of performance of the deed of trust are according to the integral terms of the debt instrument and the deed of trust. *Tipton v. Holt*, 610 S.W.2d 659 (Mo.App. 1981). In this case, the deed of trust provides, in pertinent part:

4. Payment of Contract Debt. Grantor [Oak Bluff] shall promptly pay when due all amounts required under the Settlement Agreement and Consulting Agreement and this Deed of Trust, and shall perform all covenants in this Deed of Trust.

. . .

12. Costs of Enforcement. Grantor [Oak Bluff] agrees to the extent permitted by law, to pay all costs, expenditures and expenses which may be paid or incurred by or on behalf of Trustee for attorneys' fees, appraisers' fees, publication costs and costs of procuring all abstracts of title, title searches and examination, title insurance policies, tax and lien searches, and similar data and assurances with respect to title as Beneficiary or Trustee may deem to be reasonably necessary either to prosecute the foreclosure or to evidence to bidders at any sale. All such expenses shall become additional indebtedness secured hereby and shall be immediately due and payable.

Oak Bluff contends that in this case the settlement agreement is the equivalent of a "note" in the normal financial arrangement. The documents do not support this contention. The settlement agreement

and the consulting agreement both reference the deed of trust. The deed of trust provides that its provisions are secured by the deed of trust. In light of all the documents entered into by the parties, the equivalent of a "note" is all three documents; i.e., the settlement agreement, consulting agreement, and the deed of trust. The terms agreed to by the parties include payment of the attorneys' fees along with the other amounts due under the deed of trust. All such amounts were required to be tendered in order to pay "full satisfaction" to Meyer. Meyer was under no obligation to execute a deed of release until he received satisfaction under the deed of trust freely entered into between the parties.

Oak Bluff contends that requiring the payment of attorneys' fees is contrary to *Leone v. Bear*, 362 Mo. 464, 241 S.W.2d 1008 (Mo.1951); *Mills v. 1st Nat. Bank of Mexico*, 661 S.W.2d 808 (Mo.App.1983); and *Tipton*. All three cases are distinguishable; each involves a note secured by a deed of trust. In *Leone*, the notes did not refer to the deed of trust and contained no acceleration clause. In *Mills*, the court found that the deed of trust did not set out the terms of the note, which contained no acceleration clause. Further, the note did not impose the obligation of attorneys' fees on the maker of the collection of the debt. *Mills* at 813. In *Tipton*, the payment of attorneys' fees became an obligation only if the note was "collected by suit or foreclosure," which could only occur after the time of redemption. *Tipton* at 661.

■ Oak Bluff also relies on dicta in *Tipton* to argue that a requirement to pay reasonable attorneys' fees conflicts with the right of redemption. Even if the dicta were accurate, it does not apply in this case. Paragraph 12 of the deed of trust, quoted above, clearly defines the attorneys' fees due as those fees "paid or incurred" as the "Beneficiary or Trustee may deem to be reasonably necessary." This amount is not indefinite but is defined at any given point by the beneficiary or trustee. The integral provisions of the debt instrument and deed of trust require the payment of attorneys' fees paid or incurred prior to the sale.

Oak Bluff argues that the deed of trust did not provide for the payment of Meyer's attorneys' fees, but only for the payment of the trustee's attorneys' fees. It also argues that paragraph 11 of the deed of trust is the applicable provision and requires the attorneys' fees to be paid from the proceeds of the sale. These arguments are without merit.

Paragraph 12 is the applicable provision. Although Oak Bluff argues the deed of trust only provides for the payment of the trustee's attorneys' fees, the deed of trust provides that if Oak Bluff defaulted on its obligation to pay Meyer, Oak Bluff would pay not only the trustee's attorneys' fees, but also the attorneys' fees paid "on behalf of" the trustee. Nothing in the record shows that the attorneys' fees in question did not result from the foreclosure proceedings and Meyer's defense against Oak Bluff's declaratory judgment action and motion for temporary restraining order.

Moreover, if Oak Bluff desired to contest the amount of attorneys' fees, or contest whether the deed of trust required Oak Bluff to pay such fees, Oak Bluff could have sought judicial determination of the amount necessary to redeem the property. Instead, Oak Bluff filed for declaratory judgment and injunction against Meyer in August 1996, attempting to prevent the foreclosure and failed to argue the alleged impropriety of the demanded attorneys' fees. After Oak Bluff's motion for temporary restraining order and petition for preliminary injunction were denied, Oak Bluff paid Meyer the entire amount he claimed, then sued him alleging civil conspiracy.

■ To prove civil conspiracy Oak Bluff must prove that conspirators "knowingly performed any act or took any action to further or carry out the *unlawful purposes* of the conspiracy." *Chmieleski v. City*

*Products Corp.*, 660 S.W.2d 275, 290 (Mo. App.1983) (emphasis added). Without a showing that Oak Bluff tendered an amount that fully satisfied the debt owed under the deed of trust and that Meyer then conspired to refuse the tender and not release the property, Oak Bluff has not shown a necessary element of civil conspiracy, that the actions taken in furtherance of the alleged conspiracy were unlawful.

Meyer had a right under the deed of trust to demand full satisfaction including attorneys' fees before giving Oak Bluff a deed of release. The trial court's judgment in favor of Oak Bluff on Count II is reversed.

### Oak Bluff's Cross-Appeal

On cross-appeal, Oak Bluff argues the trial court erred in not granting a directed verdict at the close of all of the evidence or entering judgment notwithstanding the verdict on Oak Bluff's claim for breach of contract in Count I.

A directed verdict is a drastic action to be taken sparingly and only where reasonable persons in an honest and impartial exercise in their duty could not differ on a correct disposition of the case. *Bank of Kirksville v. Small*, 742 S.W.2d 127, 129 (Mo. banc 1987). This Court reviews the evidence and reasonable inferences therefrom in the light most favorable to the jury's verdict, disregarding evidence to the contrary. *Seitz v. Lemay Bank and Trust Co.*, 959 S.W.2d 458, 461 (Mo. banc 1998).

In this case, Oak Bluff failed to make payment on or before August 1, 1996. Though Simmons testified that he mailed a check to Meyer on July 31, 1996, the postmark on the envelope mailed to Meyer was August 1, 1996. The check Meyer received on August 3, 1996, was a facsimile copy of a photocopy of a check drawn on Oak Bluff's account. It was within the jury's discretion to determine whether Oak Bluff defaulted on its obligation to pay Meyer and to determine whether or not Meyer breached the contract. There is competent evidence to support the jury's verdict. The judgment on this point is affirmed pursuant to Rule 84.16(b).

The judgment entered on Counts I and III is affirmed. The judgment entered on Count II is reversed.

All concur.