ROLLA APARTMENTS/OVERALL CONSTRUCTION INDUSTRIES, INC., Plaintiff–Respondent,

v.

STATE TAX COMMISSION, Defendant–Appellant.

No. 16541.

Missouri Court of Appeals, Southern District, Division One.

Sept. 4, 1990.

Motion for Rehearing or Transfer Denied Sept. 26, 1990.

Application to Transfer Denied Nov. 20, 1990.

---

**2.** Lack of padding not objected to on grounds such defect was not pleaded in plaintiff's peti-

tion.

Ronald D. White, Williams, Robinson, Turley, Crump & White, Rolla, Joseph W. Rigler, Salem, for defendant-appellant.

Jerome Wallach, St. Louis, for plaintiff-respondent.

PARRISH, Judge.

This is an appeal from a circuit court judgment entered pursuant to § 536.140.5 [1] following judicial review of an order of the State Tax Commission of Missouri. Overall Construction Industries, Inc., a Missouri not-for-profit corporation, owns and operates real estate in Phelps County, Missouri, known as Rolla Apartments. The corporation (hereafter referred to as "Rolla Apartments") appealed an assessment of its property made for the year 1985.

The initial appeal was to the Phelps County Board of Equalization. § 138.060. The Board of Equalization declined to

---

1. All references to statutes are RSMo 1986 un- less otherwise stated.

change the assessment of the property. Rolla Apartments then appealed to the State Tax Commission (hereafter referred to as "Commission"). § 138.430. The Commission affirmed the assessment as determined by the County Board of Equalization. Rolla Apartments then filed its petition for judicial review in the Circuit Court of Phelps County. § 536.100 and .110. The trial court considered the case upon the petition and the record of the proceedings conducted by the Commission. § 536.130 and .140. It entered judgment which included findings that Rolla Apartments operated the property in question for charitable purposes and was entitled to exempt tax status for its property, in accordance with § 137.100(5), as to property taxes. The judgment thereby reversed the Commission's order. The trial court's judgment declared that "all costs and legal fees be assessed against Defendant, State Tax Commission." The Commission filed this appeal. § 536.140.6.

■ This court's review is directed to the findings and decisions of the Commission. *City of Cabool v. Mo. State Bd. of Mediation*, 689 S.W.2d 51, 53 (Mo. banc 1985); *Affiliated Medical Transport v. Tax Comm'n*, 755 S.W.2d 646, 649 (Mo.App. 1988). Inquiry on appeal is limited—except with respect to challenges made to the Commission's interpretation or application of laws and legal standards to the facts—to determining whether the Commission's findings and determinations are consistent with applicable constitutional provisions; are within the Commission's statutory authority or jurisdiction; are supported by competent and substantial evidence upon the whole record; are authorized by law; are based upon lawful procedure and upon a fair trial; are not arbitrary, capricious or unreasonable; and do not constitute an abuse of discretion. § 536.140.2 and .3. That inquiry is limited, however, to those points on appeal which the Commission asserts as trial court errors. § 536.140.6; Rule 84.13.

Rolla Apartments operates an independent housing development for low-income elderly and handicapped persons in Phelps County. It operates that facility on the real estate that is the subject of this proceeding. Its articles of incorporation state the following corporate purposes:

(a) To provide elderly persons and handicapped persons with housing facilities and services specially designed to meet their physical, social and psychological needs, and to promote their health, security, happiness and usefulness in longer living, the charges for such facilities and services to be predicated upon the provision, maintenance and operation thereof on a nonprofit basis, where no adequate housing exists for such groups, pursuant to Section 202 of the Housing Act of 1959, as amended.

(b) To operate exclusively for nonprofit purposes; and no part of the income or assets of the Corporation shall be distributed to, nor inure to the benefit of, any individual or entity organized for profit.

(c) To promote the welfare of elderly and handicapped families by design and implementation of selected social housing and economic growth programs to benefit elderly and handicapped persons and their families in and about the State of Missouri in cooperation with private enterprise, community organizations, planning commissions and governmental agencies, in such a manner as to combat and prevent community deterioration and lessen the burdens of government.

Rolla Apartments has owned the real estate in question since the apartment building was constructed in 1980. The construction of the building was financed by a direct loan made to Rolla Apartments by the U.S. Department of Housing and Urban Development (hereafter referred to as "HUD"). The building contains 150 apartments, 144 of which are one-bedroom units. The remaining six units each have two bedrooms. Fifteen of the apartments are specially designed for handicapped occupants in accordance with HUD requirements. The units that are designed for handicapped persons have larger bathrooms than other units, no bathtub, and have kitchens designed to accommodate persons in wheelchairs.

There are other facilities included in the apartment building for use by the tenants. These include laundry facilities on each floor of the building and a community room equipped with a kitchen.

The facilities are managed by a private management company employed for that purpose.[2] The management company has five employees at the facility: a manager, an activity director, a maintenance supervisor, and two janitorial employees. The manager has responsibility for renting the units. This includes assuring that prospective tenants meet income and eligibility requirements that are imposed by HUD.

The activity director designs programs for the tenants. This includes organizing events in which the tenants may participate and providing transportation, as needed, by utilizing a van that is made available for that purpose. The maintenance supervisor and the two other employees maintain the project, cut the grass, and perform janitorial service.

In order for a person to become a tenant, that person must meet prescribed standards. The tenant must be at least 62 years of age, or, if handicapped, at least 18 years old. Each tenant must be capable of caring for herself or himself—the apartment complex is an independent living facility—and in 1986, at the time of the hearing before the Commission, a tenant's income could not exceed $12,700 per year. At least 30% of the units are required to be leased to persons whose incomes are classified "very low income." In 1986, in order to be classified as a person with "very low income," a person could have income of no more than $7,900 per year. In order for couples to be classified as having "very low income," they could have no more income than $9,100 per year, and for a couples' incomes to be classified "low income," the couple could have no more than $14,500 income per year. The income guidelines for being classified "low income" and "very low income" are adjusted periodically by HUD. In 1985 the guidelines were somewhat lower than the amounts in effect at the time of the hearing in 1986.

If the apartments are not fully occupied, units that have been vacant for an extended period—over 30 or 60 days—can be rented, with HUD authorization, to other persons at rentals as determined by the local rental market. HUD must grant permission to rent each such unit on a unit-by-unit basis.

The rent paid by each qualifying tenant is calculated by use of a formula prescribed by HUD.[3] At the time of the 1986 hearing, 140 of the 150 tenants of Rolla Apartments were subsidized tenants. At least one tenant paid no rent—the calculation was 0. That tenant received a monthly payment of $50 from Rolla Apartments (for which Rolla Apartments was subsidized by HUD) with which the tenant could pay utilities.

Rolla Apartments operates so as to generate some surplus funds. HUD requires that all surplus funds be deposited into a "Replace and Reserve Residual Receipts Account" within 60 days after the end of each fiscal year. Withdrawals from that account can be made only for capital replacement items and only with written permission of HUD.

■ By its first point on appeal, the Commission asserts that the record does not reflect that respondent paid taxes under protest and, therefore, that the judgment ordering the refund of taxes paid under protest is defective. Further, the Commission claims that the judgment ordering the refund is beyond the scope of the pleadings which sought judicial review;

2. The rate of compensation paid to the management company ranges from 5 to 5½% of gross receipts as approved by HUD.

3. The formula used to determine rent imputes a monthly income to the tenant based upon the amount of the tenant's noncash assets. Amounts are deducted from the imputed income for medical expenses in excess of 3% of the imputed income and for an "elderly deduction" in the amount of $400. A utility charge is also deducted. The utility charge is calculated as being 30% of the remainder of the imputed income less the deductions for medical expenses and for the elderly deduction. The balance is the amount of rent paid by the individual tenant. HUD pays the remainder of the prescribed rent in the form of a direct rent subsidy.

that the collector was not a party to the action and cannot be bound by the judgment; and that the judgment ordering a refund of taxes paid under protest is so vague that it is unenforceable.

The Commission's own order, entered in the appeal by Rolla Apartments of the decision of the local board of equalization, included the following directive:

4.2 DISBURSAL OF TAXES. The Collector of Phelps County shall disburse the protested taxes presently in an escrow account in accord with the decision on the underlying assessment in this appeal. However, if any or all protested taxes have been disbursed pursuant to Section 139.031.8, RSMo Cum.Supp.1984, the parties, or one of them, shall apply to the circuit court having jurisdiction of the cause for disposition of the protested taxes held by either the collector or the taxing authority.

The Commission offers no explanation as to why, in its brief filed with this court, it claims that the record "does not reflect that respondent paid any taxes under protest," although its own order in Rolla Apartment's appeal from the board of equalization identifies "protested taxes in an escrow account."

■ The Commission's allegation that the record does not reflect that Rolla Apartments paid taxes under protest fails. The trial court had before it the Commission's order directing the Collector of Phelps County to disburse "protested taxes

presently in an escrow account." That part of the record afforded a sufficient basis for the trial court to order "the refund of taxes paid .under protest." By finding for Rolla Apartments and against the Commission, the trial court reversed the decision of the Commission, as permitted by § 536.140.5. The trial court had authority to order the Commission "to take such further action as it may be proper to require." § 536.140.5. Under these circumstances, having reversed the decision of the Commission, the appropriate action by the trial court would have been to order the Commission to direct that the Collector of Phelps County order "such taxes refunded to the taxpayer," as provided by § 139.031.3,[4] and to remand the case to the Commission for that purpose.[5] In that regard, the Commission's complaint as to the enforceability of the trial court's judgment is well taken. This shortcoming does not, however, suffice as a basis for reversal of the decision of the trial court.

■ The Commission's allegations that the pleading before the trial court was for judicial review and not for tax refund and that the collector was not a party also fail as allegations of trial court error. Chapter 139 relates to payment of taxes under protest and initiation of actions in the circuit court to recover amounts paid under protest.[6] Chapter 138 prescribes the procedure by which a taxpayer appeals an unfavorable decision of a local board of equalization. Section 138.430 grants owners of

4. Section 139.031.3 provides that "the commission may order all or any part of such taxes refunded to the taxpayer ... in its decision and order issued pursuant to chapter 138, RSMo."

5. For example, see the directive to the trial court in *In re St. Joseph Lead Co.,* 352 S.W.2d 656, 664 (Mo.1961).

6. § 139.031 states, in pertinent part:
1. Any taxpayer may protest all or any part of any taxes assessed against him, except taxes collected by the director of revenue of Missouri. Any such taxpayer desiring to pay any taxes under protest shall, at the time of paying such taxes, file with the collector a written statement setting forth the grounds on which his protest is based.
2. The collector shall disburse to the proper official all portions of taxes not so protested and shall impound in a separate fund all

portions of such taxes which are so protested. Except as provided in subsection 3 of this section, every taxpayer protesting the payment of taxes shall, within ninety days after filing his protest, commence an action against the collector by filing a petition for the recovery of the amount protested in the circuit court of the county in which the collector maintains his office. If any taxpayer so protesting his taxes shall fail to commence an action in the circuit court for the recovery of the taxes protested within the time prescribed in this subsection, such protest shall become null and void and of no effect, and the collector shall then disburse to the proper official the taxes impounded, and any interest earned thereon, as provided above in this subsection.

real property (as well as owners of tangible personal property) the right to appeal decisions of local boards of equalization.[7] The inner workings of chapters 138 and 139 are coordinated by § 139.031.3 which provides that if taxes paid under protest are subject to an appeal to the Commission, it is unnecessary to commence an action against the collector in order to recover protested taxes. Rather, § 139.031.3 states that "the commission may order all or any part of such taxes refunded to the taxpayer, or may authorize the collector to release and disburse all or any part of such taxes in its decision and order issued pursuant to chapter 138, RSMo." No separate action was required in order to attempt to address the refund of taxes paid under protest with or without the collector as a party. § 139.031.3.

For its second point on appeal, the Commission contends that the decision of the trial court that the real estate of Rolla Apartments is exempt from taxation is incorrect for the following reasons. The Commission claims that Rolla Apartments was required to appeal the decision of the board of equalization on the exemption question directly to the Circuit Court of Phelps County within 30 days of the decision. The Commission argues that Rolla Apartments had no other right to appeal in this case as to the exemption question and, therefore, the trial court had no jurisdiction to review that issue in a proceeding for administrative review. The Commission further asserts, alternatively, that the issue of tax exemption is beyond the scope of Rolla Apartments' appeal from its tax assessment. Finally, as part of its second point on appeal, the Commission contends that the finding of tax exemption by the trial court is ineffective because "the assessor was not made a party to the suit."

The Commission, in arguing that Rolla Apartments was required to appeal the issue of tax exemption directly to the circuit court following the decision of the board of equalization, relies on § 138.430.2. That statute provides that taxpayers have the right to appeal decisions by the board of equalization concerning all questions and disputes involving the exclusion or exemption of property from assessment directly to the circuit court.[8] An appeal as permitted by § 138.430.2 must be taken not later than 30 days after the final decision of the board of equalization. The Commission suggests, by its brief filed with this court, that it has no authority to determine property tax exemptions. It cites only § 138.430.2 for that proposition. This court, in its review of reported cases, found no cases that support the Commission's claim in this regard. However, in Linneman, *Missouri's Property Tax Appeal Process*, 45 J.Mo.Bar 553, 554 (1989), it is suggested that two alternate procedures exist for purposes of appealing from a de-

---

**7.** With respect to appeals from boards of equalization, § 138.430 states:

1. Every owner of real property or tangible personal property and every merchant and manufacturer shall have the right to appeal from the local boards of equalization to the state tax commission under rules prescribed by the state tax commission, within the time prescribed in this chapter or thirty days following the final action of the local board of equalization, whichever date later occurs, concerning all questions and disputes involving the assessment against such property, the correct valuation to be placed on such property, the method or formula used in determining the valuation of such property, or the assignment of a discriminatory assessment to such property. The commission shall investigate all such appeals and shall correct any assessment or valuation which is shown to be unlawful, unfair, improper, arbitrary or capricious. Any person aggrieved by the deci-

sion of the commission may seek review as provided in chapter 536, RSMo.

2. Every owner of real property or tangible personal property and every merchant and manufacturer shall have the right to appeal to the circuit court of the county in which the collector maintains his office, from the decision of the local board of equalization not later than thirty days after the final decision of the board of equalization concerning all questions and disputes involving the exclusion or exemption of such property from assessment or from the tax rolls pursuant to the Constitution of the United States or the constitution or laws of this state, or of the taxable situs of such property. The appeal shall be as a trial de novo in the manner prescribed for nonjury civil proceedings.

. . . . .

**8.** The text of § 138.430.1 and .2 is set out at n. 7, *supra*.

termination made by a board of equalization that property is not exempt from taxation.[9] The position stated in that article is consistent with this court's reading of § 138.430.1 and .2. Section 138.430.1 permits taxpayers to appeal from local boards of equalization to the Commission "concerning all questions and disputes involving the assessment against such property." Section 138.430.2 permits taxpayers to appeal from local boards of equalization to the circuit court "all questions and disputes involving the exclusion or exemption of such property from assessment."

■ Taking the words in the applicable statute in their plain or ordinary and usual sense, § 1.090, questions or disputes over whether specific property is exempt or excluded from taxation by reason of existing statutes or constitutional provisions are questions and disputes "involving the assessment against such property." § 138.430.1. Under the language of § 138.430.1 and .2, a taxpayer may choose whether to appeal an adverse decision of a local board of equalization with respect to whether property is exempt or excluded from property taxes directly to the circuit court or to the Commission. If the appeal is to the circuit court, the appeal shall be by trial de novo without constraints on the trial court's substituting its judgment for that of the board of equalization. § 138.430.2. If the appeal is to the Commission and if the taxpayer does not prevail before the Commission, there may still be judicial review of the Commission's decision by the circuit court. However, that review is limited to a review of the sufficiency of the evidence before the Commission to support the Commission's determination or to a review of questions of law affecting the determination of the Commission or the Commission's jurisdiction to make such determination. § 536.140.2. In undertaking to judicially review an administrative decision in accordance with chapter 536, the court may not substitute its discretion for that of the administrative agency except to such extent as the review

involves the application of law or legal principles to the facts. § 536.140.3 and .5.

■ The fact that Rolla Apartments chose not to appeal the decision of the board of equalization directly to the circuit court as to the exemption question has no effect on this appeal. Rolla Apartments was not required to pursue that method of review.

■ The Commission further complains that "the finding of exemption is beyond the scope of respondent's appeal from assessment which failed to preserve the issue of exemption." This position differs from that of the Commission at the hearing it conducted. At the outset of the hearing before the Commission, the Commission's own hearing officer announced, "Okay. The main issue in this case is whether or not this property, Rolla Apartments, should be exempt from property taxation." The assistant prosecuting attorney was present representing the Phelps County Assessor and the attorney for Rolla Apartments was present. No objection was made to that declaration by the hearing officer nor was any opposition stated to the announcement. That was the issue that was tried and the Commission specifically found in its decision and order, "The property is not exempt from taxation."

The manner in which appeals are presented before the Commission and the rules for determining the rights of the respective parties are established by the Commission. § 138.431.3. To permit the Commission's hearing officer to proclaim the main issue for decision to be the question of whether the subject property was exempt from taxation, to proceed to hear and determine that issue, but, thereafter, to assert that the issue was "not preserved," is ludicrous. As noted, the Commission had jurisdiction to hear and determine the issue as to whether the property was exempt from taxation. § 138.430.1. The hearing officer advised the parties that the question of whether the property was exempt was the "main issue" in the case. The Commission cannot now, in its appeal

9. But *see* Prugh, *Property Tax Appeals in Missouri: New Procedures Effective in 1983*, 40 J.Mo.Bar 23 (1984) for a contrary interpretation.

from the administrative review conducted by the trial court, assert for the first time that there was some perceived defect in the pleadings. The exemption issue was the issue tried before the Commission. It was the issue addressed in the administrative review conducted by the trial court. It is now properly before this court on appeal.

■ The Commission further raises a question regarding whether the finding by the trial court that the property belonging to Rolla Apartments is exempt from taxation "is binding." The Commission contends that, since "the assessor was not made a party to the suit," the determination by the trial court that the property was exempt from taxation is not binding upon the taxing authority.

The presence or lack of presence of the county assessor has no bearing on the administrative review proceeding that is the subject of this appeal. The interested parties (other than Rolla Apartments) are the tax levying government units whose revenues are dependent on the assessments which the county assessor initiates. The county assessor's participation in the proceeding before the Commission was in a representative capacity. In *State ex rel. Cass County v. Dandurand*, 759 S.W.2d 603 (Mo.App.1988), the Western District of this court addressed the problem of who should be named "as parties" in cases for administrative review, saying, at page 605:

> [I]t is apparent that the parties to the review proceeding, ... are designated, not by the composition of the review petition, but by the record made before the administrative agency. Exclusive of persons who may be permitted to intervene later on motion, the identity of the petitioners and respondents on review is already set before the petition for review is filed. The caption and allegations of a petition for review ... neither enlarge

nor reduce the composition of the parties to the case.

The court, in *Dandurand*, explained that this is no new concept in judicial review of administrative decisions. It quoted from the opinion by the Missouri Supreme Court in *State ex rel. Anderson Motor Service Co. v. Public Service Comm'n*, 339 Mo. 469, 476, 97 S.W.2d 116, 119 (1936):

> "Under the Public Service Act, the circuit court exercises a jurisdiction in its nature derivative or appellate, rather than original." *Lusk v. Public Service Commission*, 277 Mo. 264, 273, 210 S.W. 72, 75[4–7]. For these reasons it appears to us not unreasonable that the statute should require, as we think it does, that the parties who appear before the commission and are interested in its orders and decisions, shall keep themselves informed and take notice, without formal notification and summons, of the further proceedings which, by express provisions of the statute, may ensue for reviewing the order or decision of the commission.

In this case, Phelps County was an "interested" party. *See In re St. Joseph Lead Co.*, 352 S.W.2d 656, 661 (Mo.1961). The interests of the county were represented, initially before the Commission, by the assessor. An assistant prosecuting attorney of Phelps County, Ronald White, appeared at the proceedings before the Commission. A copy of the petition for administrative review, when it was filed, was, according to the mailing certificate thereon, sent to the prosecuting attorney of Phelps County, John D. Wiggins. Both of these attorneys, Mr. White and Mr. Wiggins, are attorneys of record in this appeal. The record before this court belies any lack of notice to Phelps County with respect to the filing of the petition for review, the proceedings held thereon, or this appeal.[10] The taxing

---

10. One might question why the taxing authority, the county, is not the active participant in this appeal. The Commission, not the county, assumed the activist role before this court. The Commission's posture in that regard is, arguably, unusual. It is the agency that was charged with the responsibility of hearing and determining, on review, the issues originally presented to the local board of equalization. Its findings and

decision was what the trial court reviewed. Thereafter, the Commission, not the county, appealed to this court. This places the Commission in the position of having been the disinterested body to which Rolla Apartments appealed. Nevertheless, the Commission has now placed itself in the role of Rolla Apartments' adversary. Not only has the previously disinterested Commission become an adversary of Rolla Apart-

authority is bound by the decision in the administrative review proceeding that was before the trial court and which is now before this court on appeal.

■ The Commission's third point on appeal is directed to the part of the judgment of the trial court that directs that "legal fees be assessed against Defendant, State Tax Commission." The Commission asserts that the trial court was without authority to assess legal fees against either party; that the judgment is vague in that it does not specify an amount of legal fees to be paid; and that no evidence was presented as to what constitutes reasonable attorney fees.

With few exceptions, absent statutory authorization or contractual agreement, one litigant cannot recover his attorney fees from another litigant. *Mayor, Councilmen, & Citizens, etc. v. Beard*, 636 S.W.2d 330, 331 (Mo. banc 1982); *King v. F.T.J., Inc.*, 765 S.W.2d 301, 307–08 (Mo. App.1988). There is no statutory authorization that permits recovery of attorney fees in this case nor is there a contractual agreement for that purpose. Nor does this case fall within any of the exceptions to the general rule that one litigant cannot recover his attorney fees from another litigant. The trial court exceeded its authority in directing that the Commission pay the legal fees incurred by Rolla Apartments. That part of the judgment of the trial court is reversed.

The Commission's final point on appeal asserts that the finding by the Commission that the real estate owned by Rolla Apartments is not entitled to an exemption from property taxes was supported by competent and substantial evidence and is, therefore, not arbitrary, capricious, or unreasonable. The Commission contends that its finding in that regard was not an abuse of discretion and, for that reason, that the trial court erred in entering judgment for Rolla Apartments.

The Commission correctly points to § 137.100 as the statutory provision that permits certain property to be exempt from taxation. The pertinent part of § 137.100 states:

> The following subjects are exempt from taxation for state, county or local purposes:
>
> .     .     .     .     .
>
> (5) All property, real and personal, actually and regularly used exclusively for religious worship, for schools and colleges, or for purposes purely charitable and not held for private or corporate profit, except that the exemption herein granted does not include real property not actually used or occupied for the purpose of the organization but held or used as investment even though the income or rentals received therefrom is used wholly for religious, educational or charitable purposes;
>
> .     .     .     .     .

The Commission also correctly asserts that this appeal involves the review of a decision as to whether certain real property is exempt from taxation. However, the Commission further claims:

> [T]hat this Court, as well as the trial court, is bound by the facts found by the State Tax Commission. Fact finding is an administrative agency function and the court must uphold all agency factual

---

ments, it has become the sole appellant in this case. This court's review of reported Missouri decisions disclosed only three other cases in which the Commission is shown as the sole appellant following an administrative review of its findings and decisions. Those cases are *State ex rel. Ellsworth Freight Lines, Inc. v. State Tax Comm'n*, 651 S.W.2d 130 (Mo. banc 1983); *Goldberg v. State Tax Comm'n*, 639 S.W.2d 796 (Mo.1982); and *Mo. Conf. Assoc., Seventh Day Adventists v. State Tax Comm'n*, 727 S.W.2d 940 (Mo.App.1987). No question was raised, nor explanation given, in those cases as to whether the Commission has a right to appeal from a

trial court's administrative review of the Commission's own findings and decisions. It has been held in other types of cases that, in order to be "aggrieved" by a judgment and to thereby have a right to appeal, the judgment must directly affect a party's pecuniary or property right or an interest he possesses. *In re Marriage of Kinnick*, 621 S.W.2d 104, 105 (Mo.App.1981); *Pirtle v. Pirtle*, 610 S.W.2d 317, 318 (Mo.App. 1980); *Conrad v. Herndon*, 572 S.W.2d 216, 219 (Mo.App.1978). For a concise discussion of rights of a party to appeal, see *Davis v. Allen*, 740 S.W.2d 699, 700 (Mo.App.1987).

determinations. The weight of the evidence is not an issue. Further, there is a presumption of validity of all agency administrative findings. (Citations omitted).

The Commission cited two cases within the quoted text, *Overland Outdoor Advertising v. Missouri State Highway Comm'n*, 616 S.W.2d 563 (Mo.App.1981), for the first proposition stated, and *Conder v. Board of Directors of Windsor School*, 567 S.W.2d 377 (Mo.App.1978), for the second. Neither of the cases cited involves application of revenue laws. The first was an appeal of an order of the Highway and Transportation Commission in which an outdoor advertising company was directed to remove certain signs because of statutory and regulatory violations. The second was an appeal from a school board's decision to terminate the contract of a tenured teacher. Neither case is apropos to the issue presented by this case.

■ In this case, the issue presented for review is the application of a law or legal standard—the application of § 137.100(5)—for purposes of determining whether the real estate owned by Rolla Apartments is exempt from taxation. The scope of review is less restricted than suggested by the Commission. § 536.140.3; *Evangelical Retirement Homes v. State Tax Comm'n*, 669 S.W.2d 548, 552–53 (Mo. banc 1984); *Affiliated Medical Transport v. State Tax Comm'n, supra; Lile v. Hancock Place School Dist.*, 701 S.W.2d 500, 504 (Mo.App.1985). For purposes of applying the provisions of § 137.100(5) and legal standards relating to that statute, this court may independently weigh the evidence and resolve factual issues; however, in so doing, due weight must be given to the opportunity that the agency had to observe witnesses and to the expertness and experience of the Commission. § 536.140.3.

The principles applicable to claims of exemption are well stated in *Affiliated Medical Transport v. State Tax Comm'n, supra:*

The law disfavors claims for exemptions from taxation. The substantial burden of establishing the property falls within the exempted class is on the person claiming exemptions under the referenced constitutional and statutory provisions. To prevent the curtailing of the purpose and intended scope of a tax exemption, the exemption statute is to be strictly but reasonably construed. (Citations omitted).

The test for determining that property is exempt because it is utilized "for purposes purely charitable" under § 137.100 was delineated by the supreme court in *Franciscan Tertiary Prov. v. State Tax Comm'n*, 566 S.W.2d 213 (Mo. banc 1978). There the court identified a three-pronged test for use in determining whether property is exempt from taxation. All three requirements must be met in order for property to be exempt. The requirements are:

1. The property must be owned and operated on a not-for-profit basis.

2. The property must be unconditionally dedicated to the charitable use, and no private profit may result.

3. The dominant use of the property must benefit society generally or an indefinite number of people.

In its brief filed with this court, the Commission goes to considerable lengths to distinguish the facts of this case with strikingly similar facts in *Franciscan*. The Commission acknowledges, however, that *Franciscan* is the "seminal case concerning tax exemption in a charitable housing project."

■ As in *Franciscan*, the owner of the premises in this case, Rolla Apartments, is a Missouri not-for-profit corporation. Rolla Apartments operates a housing project for elderly and handicapped persons under guidelines promulgated by HUD and subject to supervision by HUD. Residents of Rolla Apartments have activities organized for their participation and transportation provided to meet individual needs. Rolla Apartments administers, through HUD, a rent subsidy program that enables occupants to have housing that would otherwise be unaffordable and unavailable. Rolla Apartments' corporate purposes specifically provide that the corporation shall

provide housing and services specifically designed to meet physical, social, and psychological needs of elderly and handicapped persons and to promote their welfare by meeting housing needs which previously were not met. The evidence adduced at the hearing before the Commission clearly established that Rolla Apartments was operated in accordance with its stated corporate purposes. The property is constantly used so that it benefits elderly, handicapped persons, an indefinite number of people. Society is thereby benefitted in that occupants of Rolla Apartments are not thrust into public housing or, if not so placed, into substandard housing thereby increasing problems of government and society. *Id.* at 225.

All three prongs of the requirements identified in *Franciscan* are met. The property in question is owned and operated on a not-for-profit basis. It is unconditionally dedicated to charitable use under circumstances so that no private profit may result. Its dominant use benefits elderly and disabled persons, and by so doing, generally benefits society.

The Commission in its brief paraphrases a definition of "charity" which was quoted from *Ruling Case Law* in *In re Rahn's Estate*, 316 Mo. 492, 511, 291 S.W. 120, 128 (1926). That definition is also quoted in *Salvation Army v. Hoehn*, 354 Mo. 107, 188 S.W.2d 826 (Mo. banc 1945), which is cited in the Commission's brief. The definition characterizes charity as being a gift, applied consistently with existing laws, for the benefit of indefinite numbers of persons, that meets broadly stated needs. The Commission then concludes that Rolla Apartments bestows no gift for the benefit of an indefinite number of persons. The Commission asserts that the property owned by Rolla Apartments therefore fails to qualify as property regularly used for purposes purely charitable. § 137.100(5). That claim by the Commission was answered in *Franciscan*. The definition of charity which the Commission paraphrased is quoted in *Franciscan*.[11] That definition is the basis for the three-pronged test identified in *Franciscan*. As previously shown, the property of Rolla Apartments satisfies that test.

Lastly, the Commission represents that any benefit in the form of rent reduction to occupants of the property of Rolla Apartments is the result of charity provided by HUD, not Rolla Apartments. Once again, the Commission either overlooks or chooses to ignore the statement by the court in *Franciscan*, *supra*, at 226, where the supreme court explained that "[t]he fact that subsidization of part of the cost of furnishing such housing is by the government rather than private charitable contributions does not dictate a different result." The court stated that even if the contribution to the project in *Franciscan* had been solely from government funds, the property would qualify for exemption from taxation. *Franciscan*, *supra*. The part of the judgment of the trial court that declares that the property of Rolla Apartments is exempt from taxation is affirmed.

For the foregoing reasons, that part of the judgment of the trial court assessing legal fees to the appellant Commission is reversed. That part of the judgment reversing the order of the Commission is affirmed. This case is remanded to the

11. In *Franciscan Tertiary Prov. v. State Tax Comm'n*, 566 S.W.2d 213, 220 (Mo. banc 1978), the court quoted the definition to which the Commission refers as follows:

"Probably the most comprehensive and carefully drawn definition of a charity that has ever been formulated is that it is a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their hearts under the influence of education or religion, by relieving their bodies from disease, suffering, or constraint, by assisting them to establish themselves for life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government.... A charity may restrict its admissions to a class of humanity, and still be public; it may be for the blind, the mute, those suffering under special diseases, for the aged, for infants, for women, for men, for different callings or trades by which humanity earns its bread, and as long as the classification is determined by some distinction which involuntarily affects or may affect any of the whole people, although only a small number may be directly benefited, it is public."

trial court for entry of a judgment consistent with the views set forth in this opinion, including that the trial court remand the case to the Commission with directions to the Commission to enter an order consistent herewith.

CROW, P.J., and PREWITT, J., concur.